**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond L. GOODWIN, Defendant-Appellant.**

No. 75–1530.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1975.

Decided Feb. 16, 1976.

len wrecker and of selling that vehicle following its interstate transportation, knowing it to be stolen, in violation of the Dyer Act, 18 U.S.C. § 2312 and § 2313,[1] and in violation of the federal aiding and abetting statute, 18 U.S.C. § 2.

Robert I. Livingston was retained to represent Appellant and his wife at the preliminary hearing. After meeting Appellant for the first time and conferring with him for only five to ten minutes, Livingston allowed Appellant to take the stand and give testimony which amounted to a virtual confession to the violations charged. With the aid of other counsel, appointed before trial, Appellant filed a motion to suppress his preliminary hearing testimony. Appellant contended that Livingston's efforts were so ineffective as to be violative of the Sixth Amendment's guarantee of effective assistance of counsel. Although the district court denied the motion, it expressed concern over Appellant's incriminating preliminary hearing statements when questioning Livingston during the suppression hearing. The district court concluded that in light of the short amount of time Livingston had conferred with Appellant, Livingston was reasonable in concluding that Appellant's testimony at the preliminary hearing might "clear the whole thing up." Appellant brings this appeal, raising as his sole issue whether Livingston afforded effective assistance as Appellant's preliminary hearing counsel.

I. C. Waddey, Jr., Nashville, Tenn. (Court-appointed), for defendant-appellant.

Charles H. Anderson, U. S. Atty., Lawrence Ray Whitley, Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

PER CURIAM.

Pursuant to a two-count indictment, Appellant was convicted of aiding and abetting the interstate transportation of a sto-

■ In this Circuit, "the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance." *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974). In *Beasley* we noted

Defense counsel must perform at least as well as a lawyer with ordinary training

1. *§ 2312. Transportation of stolen vehicles*

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*§ 2313. Sale or receipt of stolen vehicles*

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or air-

craft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. [citation deleted] Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner . . . [d]efense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial. 491 F.2d at 696.

With these principles in mind we turn to consideration of the representation afforded by Mr. Livingston in this action.

Appellant and his wife were arrested on October 7, 1974, in Memphis, Tennessee. They were accused of transporting a stolen vehicle interstate and selling the vehicle, in violation of the Dyer Act. Appellant was unable to post bond and remained incarcerated. Mrs. Goodwin was released on her own recognizance. She and Appellant were involved in a civil suit in Memphis and she sought the aid of the attorney representing them in that suit, Albert W. Buford, Jr. Buford was in partnership with Lloyd A. Deal. Buford asked Deal to represent Appellant and his wife at their upcoming preliminary hearing. Deal asked Livingston to assist in the defense.

Livingston had been a practicing attorney for over twenty years at the time he represented Appellant. The last five of those years were given over to an exclusive criminal law practice. At the suppression hearing, Livingston testified that while most of his practice was in the state courts, he had handled "a good many cases in the Federal Court."[2] He also stated that in his twenty years of practice he had handled about a half dozen Dyer Act cases, two or three of these in the previous five years.

On the day which the preliminary hearing before United States Magistrate Aaron Brown, Jr., was first scheduled, Appellant's wife met Deal and Livingston in Deal's office and accompanied them on the seven or eight block walk to the Federal Building. Livingston testified that this was the only conversation he had with Appellant's wife before the hearing. Livingston stated that Mrs. Goodwin told him that Appellant was passed out in an automobile when the wrecker was stolen and when it was transported from Alabama to Columbus, Georgia. She also told him that she was forced by her brother and by Appellant's brother to drive the automobile behind the wrecker on the trip to Georgia. She also stated, according to Livingston, that Appellant received a bill of sale from his brother and brother-in-law when he took possession of the wrecker in Georgia.

Upon arriving at the Federal Building, Deal and Livingston requested a full preliminary hearing for their clients. They were informed that the government witnesses were not present and would have to be notified. The hearing was reset for a day or two later. Livingston testified that he did not talk with Appellant that day because Appellant was incarcerated.

According to Livingston's suppression hearing testimony, on the day the preliminary hearing took place Deal was tied up with a medical disposition and he, Livingston, represented Appellant and his wife. Livingston testified that he had been in court on another matter that morning and was quite busy.

Livingston first conversed with Appellant while waiting in the courtroom for the Magistrate to convene the hearing. This conversation lasted five to ten minutes. Livingston testified that Appellant conveyed the following information during the conversation:

He told me that he didn't steal the wrecker and that his brother and her brother stole it and he had nothing to do with transporting it across the state lines, as he was charged there by the United States Government, that he was passed

2. Joint Appendix at 51.

out in the car and had nothing to do with transporting it in interstate commerce.[3]

Although Livingston testified that he did not remember Appellant telling him that he knew the wrecker was stolen, Appellant's memory was somewhat different.

Q. Did you indicate that to Mr. Livingston at all, about the fact you knew the truck was stolen?

A. Well, yes, sir. That is what I was trying to say, in a sense I knew the truck was stolen.

Q. Did you tell Mr. Livingston that?

A. I don't remember. I have forgotten.

Q. Did you tell him anything about any knowledge you had about the truck being stolen? Did you indicate at all that the truck may have been stolen?

A. I don't know exactly how I put it. I believe I did tell him that I thought the truck was stolen.[4]

As the district court was to later note at the suppression hearing, the information which Livingston had received from Appellant and his wife amounted to a virtual admission that Appellant had violated § 2313.[5]

The Magistrate convened the hearing and the government put on their witnesses. One of the witnesses was a Montgomery, Alabama policeman whose testimony unsettled Appellant. The policeman testified that Appellant's wife had called his department to confess to stealing the wrecker. The policeman testified that he then conferred with Mrs. Goodwin and that she told him that she accompanied her husband while he stole the wrecker. Livingston testified that Appellant felt that his wife had "double crossed" him and he wanted to take the stand and "straighten the whole thing out."[6]

It seems clear that when Appellant took the stand at the preliminary hearing, he did not understand the crimes with which he was charged. Counsel rendering even minimally reasonable representation should have and would have realized Appellant's lack of understanding. Livingston came to no such realization. Far from it—although he never asked Appellant if he understood the charges he faced, he believed Appellant understood those charges.[7] Livingston's oversight was made even more incredible by a review of his line of questions to Appellant at the preliminary hearing. The questions suggest that Livingston did not understand the elements of a § 2313 violation. Livingston focused on whether Appellant stole the wrecker, an almost completely extraneous point for purposes of a Dyer Act prosecution, and he failed to question Appellant about his knowledge of the vehicle's stolen status, perhaps the key factual question.

In light of the knowledge element in Sections 2312 and 2313, it is difficult to understand why Livingston did not ask either Appellant or his wife whether they knew the wrecker to be stolen either when they first came in contact with it or when Appellant took possession. The district court apparently was willing to place the blame for counsel's failure to ask Appellant the key scienter question on the limited duration of his discussions with Appellant. We are unwilling to allow counsel's lack of diligence excuse his failure to ask such an important question. From the time Mrs. Goodwin contacted Buford until the hearing, Appellant was incarcerated in the county jail in Memphis. He was available throughout that period for Livingston or Deal to contact. On the day of the hearing Mrs. Goodwin came to Livingston's office for a second time but Livingston chose not to discuss the case further with her. After the government had presented its witnesses at the hearing, Livingston did not ask for even a brief recess to confer with Appellant about Appellant's desire to testify. After Livingston called Appellant to testify, the Magis-

---

3. Joint Appendix at 77.

4. Joint Appendix at 73.

5. *See generally* Joint Appendix at 48–49.

6. Joint Appendix at 48.

7. Joint Appendix at 54.

trate, apparently believing Appellant was about to make incriminating statements, warned him a second time that his statements could be very detrimental to his cause. The following exchange between Appellant and his counsel ensued:

> Mr. Goodwin: Alright, well, do you want me to go on Mr. Livingston?
>
> Mr. Livingston: I want you tell this—
>
> Mr. Goodwin: I'll tell the truth—
>
> Mr. Livingston: I want you to tell this court, did you steal a 1965 Chevrolet wrecker in the State of Alabama?[8]

Appellant was obviously relying on Livingston for legal advice. Appellant apparently believed that he was not guilty of a Dyer Act violation since he did not steal the vehicle or drive it across the Alabama-Georgia state line. This belief is born out by Appellant's testimony at the suppression hearing:

> Q. Mr. Livingston never advised you could be guilty of the offense you were charged with without having stolen the truck or driving it across the state lines?
>
> A. No, sir, not to my memory.
>
> Q. Were you relying on Mr. Livingston to advise you on those matters with respect to what you were charged with?
>
> A. Well, yes, sir. That is the reason I asked him, would it be all right if—in other words, would it be all right for me to get up there and tell.
>
> Q. When you got up there and told, you were expecting him to have told you if that was going to be wrong and get you in trouble, right?
>
> A. Well, yes, sir.[9]

Appellant had admitted to Livingston that he sold a vehicle, which he knew to be stolen and also knew to have been transported interstate. We cannot fathom how counsel could have expected Appellant's testimony to "clear the whole thing up." The district court noted during the suppression hearing that Appellant's preliminary hearing testimony amounted to a complete confession to being guilty of "a violation of Title 18, Section 2313."[10]

The district court also discussed Appellant's testimony in terms of being a confession to a violation of 18 U.S.C. § 2312, although it would appear that neither Appellant nor his wife informed Livingston, as later came out, that Appellant drove the wrecker at some point in Georgia. This evidence would seem to have been pivotal in indicating that Appellant aided and abetted the brothers.

Despite the virtual confession to violation of § 2313, Livingston, either without analyzing what he had been told or without appreciating the significance of Appellant's statements, allowed Appellant to testify because *Appellant believed* his testimony would "straighten the whole thing out." This appears to be a case of counsel relying on his client for legal advice. This is hardly reasonable representation. When his client took the stand, Livingston had done no research,[11] had not explained to Appellant the elements of the crime with which he was charged, and apparently did not realize that Appellant was in jeopardy of being prosecuted under § 2313 for selling the stolen wrecker.[12]

---

8. Joint Appendix at 15.

9. Joint Appendix at 73–74.

10. Joint Appendix at 54–55.

11. Joint Appendix at 53:

> Q. What kind of research did you do in preparation for the hearing that you were to represent Mr. Goodwin at before Judge Brown?
>
> A. Well, I didn't do any research.

12. Joint Appendix at 54:

> THE COURT: Did anybody advise him what the elements of the offense under Title 18, Section 2312 are?
>
> THE WITNESS [Mr. Livingston]: He knew what he was charged with.
>
> THE COURT: What was he charged with?
>
> THE WITNESS: Transporting a stolen vehicle across state lines.
>
> THE COURT: Did he think he had to drive it to be guilty of that?
>
> THE WITNESS: No, sir. His position was to me that he didn't steal it.
>
> THE COURT: He wasn't charged with stealing and there is no federal offense of stealing an automobile. The federal offense

Livingston testified that "[Appellant] got up and testified contrary to what he had told me and his wife did, too, when she testified." [13] Livingston added "[he] said he had nothing to do with it, laid it off on his brother and her brother." [14] However, both Livingston's summary of what he was told and Appellant's version of what he told Livingston prior to the hearing contain enough information to have alerted counsel rendering reasonable representation to the fact that Appellant had likely violated § 2313.

If Livingston was effecting strategy by allowing Appellant to testify, the cornerstone of that strategy, if it was reasonable, could only have been to prove that Appellant not only had not participated in the interstate transportation of the wrecker but also did not know that the wrecker was stolen. Yet, Livingston did not ask Appellant this crucial question either before the hearing or while Appellant was on the stand. Livingston never asked Appellant if he knew either brother to own a wrecker or to have represented to him that the wrecker had not been stolen. It is also inconceivable that Mrs. Goodwin was not asked before the hearing whether she knew the wrecker to be stolen. The main theme of her preliminary hearing testimony was that the brothers stole the wrecker and forced her to aid them. She mentioned eight times in her preliminary hearing testimony that her brother and brother-in-law had stolen the wrecker. The possibility that at least the gist of these statements was not relayed to Livingston in his pre-hearing conversation with Mrs. Goodwin is quite remote.

We conclude from a review of all the facts of this case that Livingston's representation of Appellant, in the respects above enumerated, did not come up to the level of representation required by the Sixth Amendment, as interpreted in this Circuit by *Beasley*. Appellant's conviction cannot stand. Harmless error tests are not applicable where, as here, Appellant has been denied a procedural right so fundamental as the effective assistance of counsel. *Beasley* at 696. As the District Court noted before entering judgment, "[the Government] couldn't have gone to trial, absent his own statement." [15]

Reversed and remanded for further proceedings.

---

is transporting it in interstate commerce, a car, knowing it to have been stolen. . . .

**13.** Joint Appendix at 55.

**14.** *Id.*

**15.** Appendix at 99.