UNITED STATES of America, Appellee,

v.

**Victor Ernesto BOSCH, Appellant.**

UNITED STATES of America, Appellee,

v.

**Victor Correa GOMEZ, Appellant.**

**Nos. 77–1109, 77–1110.**

United States Court of Appeals,
First Circuit.

Argued June 8, 1978.
Decided Sept. 29, 1978.

Wallace W. Sherwood, Boston, Mass., by appointment of the Court with whom Leonard B. Mandell, Boston, Mass., was on brief, for appellant, Victor Ernesto Bosch.

Carlos Perez Olivo, San Juan, P. R., by appointment of the Court for appellant, Victor Correa Gomez.

John Voorhees, Atty., Dept. of Justice, Washington, D. C., with whom Julio Morales-Sanchez, U. S. Atty., San Juan, P. R., and Robert J. Erickson, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* District Judge.

BOWNES, Circuit Judge.

Appellants, Correa Gomez and Ernesto Bosch, were tried together on several narcotic counts stemming from the importation of cocaine and heroin to Puerto Rico in May and June, 1975. Appellant Correa Gomez was convicted on one count of conspiracy to possess and distribute narcotics in violation of 21 U.S.C. § 846 and one count of distribution of narcotics in violation of 21 U.S.C. § 841(a)(1). He was acquitted on another count of distribution. On appeal, Correa Gomez contends that the admission of evidence implicating him in prior crimes deprived him of a fair trial, and also that his conviction was obtained in violation of the double jeopardy clause.

Appellant Ernesto Bosch was convicted of possession of narcotics in violation of 21

* Of the District of Rhode Island, sitting by designation.

U.S.C. § 841(a)(1), but was acquitted of conspiracy to distribute narcotics in violation of 21 U.S.C. § 846. He claims that he was deprived of his sixth amendment right to the effective assistance of counsel and because of improper jury instructions of his right to a fair trial.

## I. *APPELLANT CORREA GOMEZ*

During the redirect examination of one of the government witnesses, an alleged co-conspirator, the prosecutor, trying to pinpoint the date when the witness had met Correa Gomez, asked him whether he had seen the defendant in New York about one year prior to the occurrence of the crime for which appellant was being tried. The witness gave a nonresponsive answer stating: "Well, it was as to heroin that they were planning to bring to Puerto Rico."

Appellant's counsel immediately requested a mistrial, arguing that, once the jury had heard this irrelevant and highly prejudicial statement, his client could no longer obtain a fair trial. The motion was denied. Counsel then requested that the statement be stricken from the record and the jury instructed to disregard it. The court replied, "In a narcotics or a conspiracy case you can bring [in] evidence as to any prior transaction[1] of the same kind to show the disposition of the Defendant to commit the crime . . .. Motion is denied."

The next witness called by the government volunteered, despite having been instructed beforehand not to, that appellant was in the hospital recovering from a gunshot wound shortly before he allegedly participated in the narcotics transaction in issue. Because the gunshot wound had nothing to do with the present case, the parties had stipulated that it was not to be mentioned to the jury. The court, aware of this stipulation, *sua sponte,* instructed the jury to disregard the statement and struck the testimony from the record immediately after the statement was volunteered. Appellant then moved for a mistrial, which re-

quest was denied, but which resulted in the court spending several additional minutes reinstructing the jurors that it would be extremely unfair for them to consider the reference to the gunshot wound in determining appellant's guilt or innocence on the narcotics charges.

 Appellant contends that he was deprived of a fair trial because of the admission of the statement as to his prior heroin involvement and the excluded gunshot wound testimony. It is well settled that evidence of prior criminal acts is inadmissible for the purpose of proving that a defendant has a criminal disposition. *United States v. Fosher,* 568 F.2d 207, 211–12 (1st Cir. 1978); *United States v. Myers,* 550 F.2d 1036, 1044 (5th Cir. 1977); *United States v. Foutz,* 540 F.2d 733, 736 (4th Cir. 1976); *United States v. Barrett,* 539 F.2d 244, 248 (1st Cir. 1976). Such evidence should only be admitted after the court determines that it is relevant for another reason, *e. g.,* to show preparation, plan, knowledge or identity, and that its probative value is not substantially outweighed by the danger of unfair prejudice. *Myers, supra; Barrett, supra.* Clearly, then, the district court's decision to allow the volunteered statement concerning appellant's prior involvement with heroin traffic to remain in evidence solely because it was relevant to appellant's criminal disposition was error. *United States v. Dansker,* 537 F.2d 40, 57–58 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975). The question remains, however, whether it constitutes reversible error.

"A nonconstitutional error, as in the case of erroneous admission of similar act evidence, is harmless if it is 'highly probable' that the error did not contribute to the verdict . . .. Where there is overwhelming evidence of guilt . . . erroneous evidentiary rulings on such collateral

---

1. Strictly speaking, the statement did not establish a prior transaction, merely what "they" were planning.

matters are often harmless." *United States v. Corey,* 566 F.2d 429, 432 (2d Cir. 1977); *accord, United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir. 1977); *United States v. Splain,* 545 F.2d 1131, 1133–34 (8th Cir. 1976); *United States v. Roland,* 449 F.2d 1281, 1282 (5th Cir. 1971). In the present case, the evidence against Correa Gomez can fairly be characterized as overwhelming. The chief government witness was Raymond Rivera who had been directly involved in importing heroin and cocaine from New York City to Puerto Rico. He and one Jose Luis were planning to bring heroin to Puerto Rico, and Rivera felt that it was essential to find "the man" to distribute the drugs because Rivera did not know many people in the metropolitan area of San Juan. Correa Gomez was picked as the distribution man. Rivera's testimony, which was not seriously challenged, went into great detail as to the importation and distribution of heroin and cocaine in San Juan by himself and appellant. According to Rivera, the appellant played a key role in the distribution of the drugs. Rivera's testimony as to the offenses specified in the indictment was clear, precise and uncontradicted. Another witness, Gorgonio Lopez, also testified as to Correa Gomez's involvement in the offenses for which he was tried. Given the strength of the evidence against Correa Gomez and the fact that his prior involvement with heroin traffic was only referred to once, and then briefly, we find that the district court's decision to allow that reference to remain in evidence does not constitute reversible error.[2] *See United States v. Plante,* 472 F.2d 829, 830–32 (1st Cir.), *cert. denied,* 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411 (1973).

■ Any prejudice which may have been caused by the volunteered statement concerning the gunshot wound was effectively cured by the court's immediate and comprehensive instructions to the jury to disregard that evidence. *United States v. Plante, supra,* at 830–31. The admission of the evidence concerning prior plans for importing heroin and the excluded gunshot wound testimony neither individually nor collectively call for a reversal of Correa Gomez's conviction.

The second issue raised by Correa Gomez is whether his conviction for conspiring to possess and distribute narcotics in May and June, 1975, was obtained in violation of the double jeopardy clause. One year prior to his trial on the conspiracy charge, he pled guilty in a different case to aiding and abetting in the unlawful possession of narcotics on June 11, 1975. Appellant concedes that aiding and abetting is a substantive charge and that, generally, a defendant may be prosecuted for both conspiracy and the underlying substantive offense, even when the substantive offense is aiding and abetting. *Iannelli v. United States,* 420 U.S. 770, 777–78, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). He argues, however, that an exception to the general rule is applicable to this case.

■ The exception appellant relies on is confined to those situations in which an acquittal on one charge clearly constitutes a finding that a fact essential to the proof of another charge does not exist. Under such circumstances, the prosecution of the other charge is barred. *Ashe v. Swenson,* 397 U.S. 436, 443–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe,* a group of poker players were robbed during the course of their game. Defendant was tried and acquitted on the charge of robbing one of the players. He was then tried and convicted in a different action for robbing another. When the second case reached the Supreme Court, it held that the second conviction was obtained in violation of the double jeopardy clause because a close examination of the record from the first trial revealed that the acquittal in that case had to have been grounded upon a finding by the jury that defendant was not at the scene when the crime oc-

---

**2.** Having failed to request an instruction in the district court that the evidence could only be considered for limited purposes, we decline to reach the issue, raised by appellant, whether the district court's failure to give such instruction constitutes error. *United States v. Fosher,* 568 F.2d 207, 210 n.12 (1st Cir. 1978).

curred. The issue whether he was at the scene, having been determined by a valid and final judgment, could not, in accordance with the principle of collateral estoppel, be litigated again between the same parties in any future lawsuit. Therefore, since proof of his presence at the scene was essential to the case against him in the second action, the conviction could not stand.

■ Appellant argues that the *Ashe* rule is applicable to the present case because the drugs upon which both the aiding and abetting and the conspiracy charges against him were based were from the same shipment and proof of both of the charges was dependent upon a finding that he entered into the same agreement to distribute the drugs. The *Ashe* rule is inapplicable, however, for two reasons. First, it only applies where the defendant has been acquitted of the first charge brought against him. Here, appellant pled guilty to the aiding and abetting charge. Second, by pleading guilty to the aiding and abetting charge, he was not necessarily admitting that he entered into the agreement upon which the conspiracy charge was based. The indictment for aiding and abetting does not refer to any agreement, and this is clearly not one of those rare cases where proof of an agreement is necessary to prove aiding and abetting. *See Iannelli, supra,* 420 U.S. at 777 n.10, 95 S.Ct. 1284; *Sealfon v. United States,* 332 U.S. 575, 580, 68 S.Ct. 237, 92 L.Ed. 180 (1948). Appellant's claim that his conspiracy conviction was obtained in violation of the double jeopardy clause is rejected.

Having found that none of the issues raised by Correa Gomez require reversal, we affirm his conviction.

## II. *APPELLANT ERNESTO BOSCH*

The sixth amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S.Const. amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

Appellant Bosch has briefly described several incidents that occurred during the course of his trial, raising questions as to the competency of his attorney. He focuses on one to support his claim that he received constitutionally-deficient representation from his trial counsel. At the close of the defense's presentation, during which appellant did not testify, Bosch's trial counsel offered into evidence a pretrial motion for reduction of bail, Exhibit "K," which contained a statement that Bosch had two prior narcotics convictions.

During a subsequent conference in the trial judge's chambers, appellant's counsel explained that he had submitted this motion to demonstrate foul play on the government's part in proving its case against appellant. In its original indictment against Ernesto Bosch, the government had listed the date of the alleged offense as June 9, 1975. The day after the indictment was issued appellant filed, and appeared in court for a hearing on, the motion to reduce bail. Several weeks later, a superseding indictment was issued, which listed the date of the offense as June 10, 1975. Appellant's counsel theorized that the second indictment was issued to rebut appellant's alibi defense for June 9, a defense which the prosecution allegedly learned about from a United States Marshal who overheard a conversation between appellant and his counsel during the course of the bail hearing. To prove one aspect of this theory, that he and his client were in court during the period between the issuance of the two indictments and, therefore, could have been overheard by a marshal, appellant's counsel introduced the bail motion into evidence because the clerk had stamped on the motion the date on which it was filed.

Trial counsel was aware when he introduced the motion that it contained references to past crimes. He made no attempt, however, to delete this from the document prior to introducing it into evidence or at any time thereafter. Evidently, it never

occurred to defense counsel that he could prove his client's presence in court on June 10 without also informing the jury of the prior convictions.

During their deliberations, the jurors asked:

> Are we allowed to consider the Government and Defense Exhibits?
>
> I'm referring specifically to Defendant's Exhibit "K" which is attached.

The trial judge, after meeting with counsel, instructed the jury:

> [Y]ou are to consider it, each and every exhibit admitted in evidence.

Sometime later, the jury sent the following message to the district court:

> In Exhibit "K" it is stated that Mr. Victor Ernesto Bosch has served two sentences for violation of the Narcotics Act. Most of us have been influenced about his character with this statement. (Please see Item # 3 Exhibit "K".) Are we allowed to be influenced by this statement?

When informed by the court of the jury's questions as to the references, appellant's counsel requested neither a mistrial, an instruction to disregard, nor a limiting instruction. He appeared content to leave the matter of how to respond to the jury's query entirely to the district judge, even when informed by the judge that he intended to instruct the jurors that they could consider the statement for any purpose, which he did. Our reading of the colloquy between defense counsel, the court and the prosecutor leads to the conclusion that defense counsel was so captivated by his own theory of government foul play that he failed to recognize the import of what the jury was saying.

■ Heretofore, we have adhered to the rule that "ineffective counsel . . . means representation such as to make a mockery, sham or a farce of the trial." *United States v. Wright,* 573 F.2d 681, 683–84 (1st Cir. 1978). The majority of the other circuits, however, have within the last decade replaced the "sham and mockery" standard with a "reasonably competent assistance" standard, or facsimiles thereof.[3] Since incompetence confined to one aspect of a case, as it is here, cannot generally be said to render the entire proceedings a "farce and mockery of justice," and, since appellant's claim has merit when considered under the "reasonably competent assistance" rule, we think that this appeal is an appropriate one in which to reexamine our adherence to the "farce and mockery" standard.

The farce and mockery standard appears to have been established in *Diggs v. Welch,* 80 U.S.App.D.C. 5, 148 F.2d 667, *cert. denied,* 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945). *Rickenbacker v. Warden, Auburn Correctional Facility,* 550 F.2d 62, 67 (2d Cir. 1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977) (dissenting opinion); *Beasley v. United States,* 491 F.2d 687, 693 (6th Cir. 1974). In the view of the *Diggs* court, the sixth amendment only guaranteed assistance of counsel, not effective assistance. *Diggs v. Welch, supra,* 80 U.S.App.D.C. at 6, 148 F.2d at 668. Therefore, the court treated the incompetence of counsel claim before it as arising under the due process clause's guarantee of a fair

---

**3.** *Marzullo v. Maryland,* 561 F.2d 540, 543, 544–45 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); *United States v. Bad Cob,* 560 F.2d 877, 880 (8th Cir. 1977); *Cooper v. Fitzharris,* 551 F.2d 1162, 1166 (9th Cir. 1977); *Haggard v. Alabama,* 550 F.2d 1019, 1022 (5th Cir. 1977); *Ortiz v. Sielaff,* 542 F.2d 377, 379 (7th Cir. 1976); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974); *United States v. DeCoster,* 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (1973); *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970) (*en banc*). The Second and Tenth Circuits still adhere to the "farce and mockery of justice" standard, although the

Second indicates that it would be willing to reexamine its position in an appropriate case. *United States v. Bubar,* 567 F.2d 192, 202 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977); *United States v. Riebold,* 557 F.2d 697, 702–03 (10th Cir.) *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *United Sates v. Medico,* 557 F.2d 309, 318 & n.15 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977); *Rickenbacker v. Warden, Auburn Correctional Facility,* 550 F.2d 62, 66 (2d Cir. 1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977) (the dissenting opinion, in fact, urges adoption of a new standard).

trial. The court held that, to constitute a violation of an accused's right to a fair trial, his counsel's incompetence had to be so gross as to render the proceedings a farce and mockery of justice. *Id.* 80 U.S.App. D.C. at 7, 148 F.2d at 669.

This view of the basis of ineffective assistance claims can no longer withstand analysis.[4] It is now generally accepted that the sixth amendment guarantees the right to the effective assistance of counsel. *McMann, supra,* 397 U.S. at 771 n.14, 90 S.Ct. 1441; *Rickenbacker, supra; Beasley, supra,* 491 F.2d at 694; *United States v. DeCoster,* 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (1973).

■ In *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), a case dealing with the validity of a guilty plea following a coerced confession, the Court stated that the proper test for measuring the competency of counsel's advice to plead guilty is whether the advice "was within the range of competence demanded of attorneys in criminal cases." The *McMann* standard has been extended to apply to sixth amendment ineffective assistance claims in general. *Marzullo v. Maryland,* 561 F.2d 540, 543, 545 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (*en banc* as to adoption of *McMann* standard); *Beasley, supra,* 491 F.2d at 696; *DeCoster, supra,* 159 U.S.App.D.C. at 331 & n.16, 487 F.2d at 1202 & n.16; *Moore v. United States,* 432 F.2d 730, 736 n.25 (3d Cir. 1970) (*en banc*). In light of these circumstances, we are persuaded that the "farce and mockery" standard is no longer appropriate to determine the merit of ineffective assistance claims. In its stead, we follow the lead of most other circuits and adopt the "reasonably competent assistance" standard, which is shorthand for the tenet that the quality of

a defense counsel's representation should be within the range of competence expected of attorneys in criminal cases. *Marzullo, supra,* 561 F.2d at 543, 544–45; *United States v. Bad Cob,* 560 F.2d 877, 880 (8th Cir. 1977); *DeCoster, supra,* 159 U.S.App.D.C. at 331, 487 F.2d at 1202; *Moore, supra,* 432 F.2d at 736.[5]

■ Under the reasonably competent assistance standard, "effective representation is not the same as errorless representation." *Marzullo, supra,* 561 F.2d at 544. Even the most skillful criminal attorneys make errors during a trial. The myriad of decisions which must be made by defense counsel quickly and in the pressure cooker of the courtroom makes errorless representation improbable, if not impossible. This is particularly so since the determination of whether there have been errors is made by a court far removed from the heat of trial combat and with the time necessary to make a reasoned judgment. Thus, a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard. To state and prove a claim under this standard, a defendant must allege and demonstrate that his counsel's error clearly "resulted from neglect or ignorance rather than from informed, professional deliberation." *Id.* at 544.

■ Application of this standard does not mean that a court should "second guess reasoned choices between trial tactics," *Cooper v. Fitzharris,* 551 F.2d 1162, 1166 (9th Cir. 1977), nor does it mean that defense counsel, to protect him or herself against allegations of inadequacy, must "waste the court's time with futile or frivolous motions," *Wright, supra,* 573 F.2d at 684. "It

---

4. There is authority for the proposition that the *Diggs* view could not even withstand analysis at the time it was propounded. *McMann v. Richardson,* 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Beasley, supra,* 491 F.2d at 692.

5. Other circuits that have rejected the "farce and mockery" approach have adopted stan-

dards very similar to that of "reasonably competent assistance" and which, in effect, may be the same. Their standards are "counsel reasonably likely to render and rendering reasonably effective assistance" (*Cooper, supra; Haggard, supra; Beasley, supra*), and "minimum standard of professional representation" (*Ortiz, supra*).

is sufficient if [counsel] is prepared and conducts the defense with reasonable knowledge and skill with an exercise of knowledgeable choices of trial tactics." *Cooper, supra.*

In the present case, although admission of the bail motion bearing the filing date was arguably part of a defense strategy, admission of the contents of the motion, particularly the references to appellant's prior narcotics convictions, bore no relation, and clearly was not necessary, to the implementation of that strategy. It is in this respect that the cases cited by appellee are distinguishable. In those cases, the admissions of the prior convictions themselves were part of the defense strategy. *Bad Cob, supra,* 560 F.2d at 883; *United States v. Grummel,* 542 F.2d 789, 791 (9th Cir. 1976), *cert. denied,* 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

■ *United States v. Goodwin,* 531 F.2d 347, 350–52 (6th Cir. 1976), and *Marzullo, supra,* are more applicable to the present case than the cases cited by appellee because counsel's performance in *Goodwin* and *Marzullo* was not attributable to a poor choice of trial strategy, but to inexcusable ignorance or senseless disregard of their clients' rights. In *Goodwin,* counsel's ignorance of the elements of the crime with which his client was charged resulted in him allowing the defendant to make statements at a pretrial hearing that, in fact, amounted to a confession. The Sixth Circuit held that this violated the defendant's right to effective assistance under the standard, "reasonably likely to render and rendering reasonably effective assistance." *United States v. Goodwin, supra,* at 348. This standard is similar, if not in effect the same, as "reasonably competent assistance." In *Marzullo,* defense counsel failed, for no apparent reason, to move for exclusion of the jury pool from the courtroom when he knew that the court was about to be informed about information irrelevant and prejudicial to the defense. Counsel next waived some of his peremptory challenges during voir

dire before he had had the opportunity to question any of the prospective jurors about whether they had been influenced by the previously revealed damaging information. Furthermore, he never requested an instruction that the jury disregard the information. The Fourth Circuit held: "We are persuaded that [counsel's] representation of defendant with respect to this aspect of the case [selection of an unbiased jury] was outside the range of competence expected of attorneys in criminal cases" and thus constitutes a violation of the defendant's sixth amendment right. *Id.* at 546–47. In the present case, the admission of the reference to past convictions was not only not a part of any trial strategy, but also, as defense counsel himself admits, not due to oversight. Trial counsel was aware that this harmful information was in the motion at the time he offered it into evidence. Given that appellant did not take the stand, and that no purpose beneficial to appellant has been suggested or is apparent as a rationale for admission of these references, we can only reach the conclusion that it would have been clear to a reasonably competent criminal attorney that admission of these notations of past, related convictions could only cause significant harm to the appellant's case. Counsel's subsequent failure to move for a mistrial, after the jury clearly stated that the prior convictions had influenced its view of appellant's character, thus making clear the critical importance of the offending references, commands this conclusion. Consequently, we find that trial counsel's offer of these references into evidence clearly resulted from neglect or ignorance, rather than from informed, professional deliberation, and thus deprived Ernesto Bosch of his sixth amendment right to effective assistance of counsel.

■ The circuits are split on the question of whether an infraction of the sixth amendment right to effective assistance can ever be treated as harmless error, and if so, which party has the burden of proof.[6] We

6. *Compare Bad Cob, supra,* 560 F.2d at 880, and *Johnson v. Johnson,* 531 F.2d 169, 177–78

(3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), *with Cooper, su-*

shall not deal with that issue here, however, because, regardless of which position we took, our decision that appellant's conviction should be reversed would remain the same. Upon reviewing the record, we are unable "to declare a belief that [the sixth amendment ineffective assistance error] was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The evidence against appellant, although perhaps sufficient to sustain the verdict under the substantial evidence rule, was not overwhelming. *United States v. Taylor,* 508 F.2d 761, 765 (5th Cir. 1975), *appeal after remand,* 530 F.2d 49 (5 Cir. 1976). The government's case consisted primarily of the testimony of admitted accomplices, whose credibility was attacked. Moreover, the jury stated to the court during the course of its deliberations that most of its members had actually been influenced by the references to past convictions in judging appellant's character. Accordingly,

since the error was clearly not harmless in the present case, we leave for another day the issue of whether deprivation of effective assistance can ever constitute harmless error.[7]

■ There is another aspect to this case which must be discussed. The court's instructions to the jury in response to both questions about Exhibit "K" were clearly erroneous. "Evidence of other crimes . . . is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b); *United States v. Barrett,* 539 F.2d 244, 248 (1st Cir. 1976); *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975). Thus, the district court should not have instructed the jurors, as it in effect did, that they could consider the references to appellant's past crimes in terms of whether he was disposed to commit the offense with which he was then charged.

---

pra, 551 F.2d at 1165, *and Beasley, supra,* 491 F.2d at 696 (*but see United States v. Sumlin,* 567 F.2d 684, 688–89 (6th Cir. 1977)).

7. Citing Fifth Circuit precedent, appellee contends that, because appellant's trial counsel was retained, rather than court-appointed, appellant's prima facie case contains an additional element of proof. Appellant must not only demonstrate that his counsel's representation fell below the applicable standard, but also that "the authority conducting the trial and owing the sixth amendment right . . . had some connection with the incompetent representation. . . ." *United States v. Childs,* 571 F.2d 315, 316 (5th Cir. 1978).

The Fifth Circuit has adopted this position in *Fitzgerald v. Estelle,* 505 F.2d 1334, 1337 (5th Cir. 1974), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975), an appeal by a state prisoner from the denial of his petition for a writ of habeas corpus. The court held that when counsel was retained, a sixth amendment claim had to be assessed more strictly to avoid placing "a procedurally intolerable and practically impossible burden upon trial judges, who have no control over the selection of counsel employed by a defendant." *Id.* at 1336–37. To find this state involvement, the court required a showing that the trial judge or prosecutor knew that the defendant was receiving incompetent representation, but took no remedial action, participated in the incompetency themselves, or should have been aware of counsel's incompetence and taken corrective action. *Id.*

at 1337. This standard was extended by the Fifth Circuit to appeals from federal court convictions in *Childs, supra.*

Other circuits have either rejected the position that a showing of governmental participation or responsibility is necessary in claims arising from federal court convictions or have not addressed the issue. *Crismon v. United States,* 510 F.2d 356, 357 n.2 (8th Cir. 1975); *United States v. McCord,* 166 U.S.App.D.C. 1, 18 n.63, 509 F.2d 334, 351 n.63 (1974) (*en banc*), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *United States v. Marshall,* 488 F.2d 1169, 1192–93 (9th Cir. 1973); *United States v. Fisher,* 477 F.2d 300, 302 (4th Cir. 1973). We need not reach the issue in the present case. As will be further explained, *infra,* the district court should have been aware that appellant was not receiving competent assistance and taken corrective action when, during a conference in the court's chambers, counsel failed to request any kind of relief for his client, despite being informed by the jury that some of its members had been influenced by appellant's prior record. Therefore, under the Fifth Circuit's standard, the required showing of governmental responsibility was met. Thus, as with the harmless error issue, our decision on appellant's ineffective assistance claim would be the same regardless of whether we adopted the Fifth Circuit's position that a defendant has a more stringent standard to meet when his counsel is retained.

 The rationale for the court's instructions was, at least, partially based on the invited error doctrine: "[w]hen a defendant, acting through competent counsel, chooses to open up constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights." *United States v. White*, 377 F.2d 908, 911 (4th Cir.), cert. denied, 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed.2d 180 (1967). The court's reliance on the invited error doctrine was, however, misplaced. In the instant case, appellant was not "acting through competent counsel" and the court should have become aware of that during the conference in its chambers on the jury's query regarding Exhibit "K." First, appellant's counsel admitted during the conference that he had been aware when he introduced the Exhibit that it contained the references to appellant's prior narcotics convictions. It appears from his statements at the conference that he had simply never thought of attempting to delete the references before admitting the motion. Second, when he was informed during the conference that at least some members of the jury were influenced by these references, he made no attempt to mitigate this harm by seeking a curative instruction or mistrial.

 Although a court is entitled to rely to a great extent on the parties' attorneys to protect their own clients' interests, the court, too, has a duty to ensure that a criminal defendant receives a fair trial. *United States v. Nobles*, 422 U.S. 225, 230, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975); *United States v. Cuevas*, 510 F.2d 848, 850 (2d Cir. 1975); *United States v. Schiavo*, 504 F.2d 1, 6 (3d Cir.), cert. denied sub nom., *Ditter v. Philadelphia Newspapers, Inc.*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974); ABA Standards Relating to the Function of the Trial Judge § 1.1(a) (Tent. Draft 1972). Since the court should have become aware during the con-

ference in chambers that counsel's performance was less than adequate, and since the jury was obviously prejudiced by its consideration of the references to the prior crimes, we find that the court by adhering to the invited error doctrine failed in its duty to ensure a fair trial. *Cf. McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Plante*, 472 F.2d 829, 831 n.3 (1st Cir.), cert. denied, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411 (1973); *Weaver v. United States*, 374 F.2d 878, 882 (5th Cir. 1967).

Since prejudicial constitutional errors occurred during the course of the trial, Ernesto Bosch's conviction is reversed and his case remanded for a new trial.[8]

---

8. Remanding for a new trial, rather than for entry of a judgment of acquittal, is in conformity with the requirements of the double jeopardy clause because the conviction is reversed due to trial error, not to a finding that the evidence was insufficient to support the verdict. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).