UNITED STATES of America, Appellee,

v.

William F. GERARDI et al., Appellants.

No. 78–1261.

United States Court of Appeals,
First Circuit.

Submitted Oct. 3, 1978.
Decided Nov. 22, 1978.

Harvey Brower, Revere, Mass., on brief for appellants.

Gerald E. McDowell, John R. Tarrant, U.S. Dept. of Justice, Washington, D.C., and Edward F. Harrington, U.S. Atty., Boston, Mass., on brief for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellants were convicted, after a jury trial, on a one count indictment charging them with conducting an illegal gambling business in violation of 18 U.S.C. §§ 2, 1955. Appellant Gerardi was sentenced to two years imprisonment and a $5000 fine, appellant Piscitelli to eighteen months imprisonment and a $3000 fine, and appellant Mastrototaro to one year imprisonment and a $1000 fine. They challenge both the legality of a wiretap used to gather evidence which comprised part of the government's case at trial and the trial court's refusal to grant a new trial when a juror afterwards expressed some doubt about the vote he had cast.

## The legality of the wiretap

Prior to trial, the defendants unsuccessfully moved to suppress the fruits of a wiretap order. The appellants claim that the order was invalid because the wiretap application allegedly failed to provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous", 18 U.S.C. § 2518(1)(c); see 18 U.S.C. § 2518(3)(c).

Our role on review of the sufficiency of a wiretap application is a limited one; it is "not to make a de novo determination of sufficiency . . . but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." United States v. Scibelli, 549 F.2d 222, 226 (1st Cir.), cert. denied, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); see United States v. Santarpio, 560 F.2d 448, 452 (1st Cir.), cert. denied, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977). The application and accompanying affidavit in this case indicate that almost six months of investigation had preceded the wiretap request and set forth reasons why investigatory procedures, other than those already employed "reasonably appear to be unlikely to succeed if tried". 18 U.S.C. § 2518(1)(c), (3)(c). They state that five confidential informants had refus-

ed to testify before a grand jury or in open court even if granted immunity; that other witnesses could not be produced; that attempts to infiltrate the gambling operation would be unsuccessful; that the structure and method of operation used by this gambling enterprise was "designed to frustrate detection by law enforcement officials"; that the premises in question was a multiple apartment dwelling and that use of the telephone could not be observed through visual surveillance; and that experience had taught the affiant that a search warrant would be unlikely to produce results because the affiant had learned through experience that gamblers destroy their records.

■ We disagree with the appellants' contention that the application constituted mere "boiler-plate". Although "an agent's bare conclusory statement that normal investigative techniques are generally unproductive in dealing with gambling operations is insufficient to meet § 2518(1)(c)'s requirements", *United States v. DiMuro*, 540 F.2d 503, 510 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *see United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1976), we are not, despite appellants' protestations to the contrary, faced with such a case here. The facts of this case are almost identical to those in *United States v. DiMuro, supra*, in which we found a similar affidavit sufficient. Although the affiant here, as in *DiMuro*, in part relied on his experience in dealing with gambling operations, he also specified that his informants would not testify, that he had been unable to find others who would, that the participants knew one another too well for infiltration to be feasible, and that the structure of the particular building in question made visual surveillance impossible. We therefore find that the district court did not err in denying the motion to suppress. *See United States v. DiMuro, supra*, 540 F.2d at 510–11.

*The motion for a new trial*

Appellants contend that the trial court abused its discretion by refusing to grant a new trial *see United States v. Zannino*, 468 F.2d 1299, 1303 (1st Cir. 1972), essentially claiming that they were convicted by less than a unanimous verdict. The events giving rise to this claim were as follows. The jury returned a guilty verdict after two hours of deliberation. Each juror was not polled individually. None of them expressed any uncertainty at the time the verdict was returned. Two days later one of the jurors wrote to the trial judge, stating:

> "Honorable Judge Skinner: I have made a mistake, I do not feel as though the three men in the Gerardi case should have been found guilty. . . . I would like to discuss with you why I come to my decision. I would also like to talk to you about the limitations of the court system and what should be done."

In response to this letter, Judge Skinner, appropriately, held a meeting with the juror and counsel for both sides. The juror explained that he had gone into the jury room with his mind open, leaning toward not guilty, had had an opportunity to express his opinion, had been persuaded to reach a guilty verdict, but had changed his mind again about a half an hour after the verdict was returned. When asked whether anyone had "twisted [his] arm or exerted any influence" over him, he replied, "no".

■ It is well-established that a juror may not impeach the validity of the verdict after it is rendered, absent a showing that "extraneous prejudicial information was improperly brought to the jury's attention or . . . any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b). The judge properly concluded that further inquiry into the deliberations of the jury was not only not required but would have been improper, and that the juror's vacillations and second thoughts did not impugn the unanimity of the guilty verdict nor in any way necessitate a new trial. The appellants' contention that the judge abused his discretion by so finding is clearly without merit. *See United States v. Eagle*, 539 F.2d 1166, 1169–71 (8th Cir. 1976).

The uncertainties expressed by this juror have prompted another argument by appellants, that they were rendered ineffective assistance at trial because their attorney declined, without first consulting with the defendants, to have the jury polled individually. Although the attorney argues from a unique vantage point, having also served as counsel at the trial, we are not convinced that, under the circumstances of this case, a decision not to request that the jurors be individually polled fell outside "the range of competence expected of attorneys in criminal cases". *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978). The trial judge, in denying the motion for a new trial, stated that he had asked the jurors as a group whether the verdict reflected their decision and that he saw no hesitancy when they responded. Defense counsel had no reason to believe that the verdict was anything less than unanimous, and his decision to forego an individual poll may have been a reasonable choice of trial tactics. But even if "unwise . . . in hindsight, [such a choice] does not constitute constitutionally-deficient representation under the reasonably competent assistance standard." *Id.* at 1121.

*Accordingly, the convictions of the appellants are affirmed.*