**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie James COOPER,
Defendant-Appellant.**

**No. 77–1830.**

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1978.

Decided Aug. 2, 1978.

Nancy Tripp (Law Student), for defendant-appellant.

James R. Burgess, Jr., U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, Circuit Judge, MILLER, Judge,* and TONE, Circuit Judge.

MILLER, Judge.

On July 13, 1977,[1] defendant-appellant (hereinafter "appellant") was tried and found guilty by a jury on both counts of a two-count indictment charging him under 18 U.S.C. § 2114[2] with robbery of United States Postal Service funds from the Landsdowne Postal Station in East St. Louis, Illinois, on May 3 and again on May 4, in the amount of $278.11 and $44.75, respectively.[3] On July 28, the district court imposed a sentence of ten years' imprisonment on count one and of twenty-five years' im-

---

\* The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. Unless otherwise indicated, all dates refer to 1977.

2. 18 U.S.C. § 2114 provides as follows:
   Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

3. Testimony of the Postal Service employee from whom the funds were taken was that appellant said: "Give me the money; or I'll blow your head off." However, there appears to have been no proof that appellant was actually armed.

prisonment on count two, the sentences to run concurrently.

Appellant argues that the trial court erred in imposing on him the twenty-five year sentence prescribed by section 2114 on count two since this sentence was intended to apply only in the case of a second offense occurring *after* a person has been *convicted* of a first offense and not to a case like this where two offenses were committed without an intervening conviction. The Government argues that the language appearing in the statute is "clear" and dismisses appellant's contention, saying:

If this is what Congress in fact intended why did not Congress, at the time of statutory revision, accomplish legislatively what the defendant now proposes to conjure up by interpretative fantasy and invention?

At sentencing, the trial court said:

The jury finding you guilty of count-one, robbing the Post Office on May 3, 1977 and also finding you guilty of coming back the next day on May 4, 1977 and robbing that same Post Office and that same lady.

The Court basically, has really no choice in this matter. The law seems to be clear on it and the Court cites the section of the statute which [it] is alleged that you violated and the jury found that you violated, being 2114 of Title 18, provides for a second or subsequent offense of this nature that you be mandatorily sentenced to the penitentiary for twenty-five years. On the first offense you can be sentenced to ten years imprisonment. The way the Court reads it I have no, basically, no choice in regard to the second or subsequent offense. That it's a mandatory sentence of twenty-five years.

. . . .

Accordingly, it is the judgment of this Court that with regard to count-one, that the defendant is hereby committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for the term of ten years. And with regard to count-two, it is the judgment of . . . this Court that the defendant be committed

to the custody of the Attorney General of the United States or his authorized representative, for imprisonment for a term of twenty-five years.

It is further the judgment of this Court that the sentences on count-one and two run concurrently with one another.

■ Although we, of course, recognize the general rule that "when words are free from doubt they must be taken as the final expression of the legislative intent" (*Caminetti v. United States,* 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917)), we also recognize "the well-established principle that penal statutes are to be construed strictly" (*FCC v. American Broadcasting Co.,* 347 U.S. 284, 296, 74 S.Ct. 593, 601, 98 L.Ed. 699 (1954)). It is obvious that section 2114 must be read with "and conviction therefor," or words of similar import, impliedly inserted after the phrase "first offense" in order to support the prescribed penalty of imprisonment for not more than ten years. Thus, a strict but entirely reasonable reading of the phrase "a subsequent offense" would refer to an offense subsequent to the first offense *and* conviction therefor, rather than to an offense subsequent to, but *before* conviction of, the first offense, as the liberal reading advanced by the Government would have it. Legislative history supports this strict reading.

Section 2114 originated in section 15 of the Act to Establish the Post Office of the United States (Act of March 2, 1799, ch. 43, 1 Stat. 736). A penalty was provided for robbing any carrier of the mail, and an enhanced penalty was provided "if convicted a second time of a like offense." A later form of that statute retained the language just quoted. Act of June 8, 1872, ch. 335, § 285, 17 Stat. 320 (codified at Title 70, Rev.Stat. § 5472 (1878)). However, in section 197 of the Act of March 4, 1909, ch. 321, 35 Stat. 1126, the language "convicted a second time of a like offense" was changed to the present "for a subsequent offense." Noting this change, the Government argues:

It can only be concluded that Congress eliminated reference to the intervening conviction requirement because such an event was no longer considered the ap-

propriate touchstone for activating the mandatory penalty provision of the statute.

Appellant points out that the Senate committee report on the bill (S. 2982, 60th Cong., 1st Sess. (1908)), which proposed "to codify, revise, and amend the penal laws of the United States," explains that "Mere changes in phraseology to avoid repetition or amend patent inaccuracies in the original text are not indicated by either brackets or italics." S.Rep.No.10, 60th Cong., 1st Sess. 5 (1908). The entire text of the revised section is in brackets, but only the phrase "twenty-five years" (a change from life imprisonment) is in italics.[4] Thus, there is an implication that the change from "convicted a second time of a like offense" to "for a subsequent offense" was not regarded as a substantive change, but a mere change in phraseology.[5] Appellant further points out that the House committee report on the proposed revision, referring to the section containing the "subsequent offense" language, states:

> The amendment to this section in effect restores existing law upon this subject. The House amendment consolidated two sections of existing law, to wit, §§ 5472 and 5473, R.S. The effect of the amendment is to divide the offense denounced, one being an assault of a person having lawful control of the mail with the intent to rob, steal, or purloin such mail or the robbing of such person of such mail, and the second being the effecting or attempting to effect such robbery by the use of a dangerous weapon.
>
> The amendment simply divides the sections into two parts and affixes a different penalty for the two distinct offenses.

H.R.Rep.No.2270, 60th Cong., 2d Sess. 104 (1909). If the phrase "subsequent offense" had been regarded as a substantive change, the committee report would hardly have said that the amendment "in effect restores existing law."

It is to be noted that, during debate in the Senate on section 198 of S. 2982, attention was only directed to making certain that attempts to rob the mail and use of a deadly weapon were covered. For example:

> Mr. Bacon: . . . I will read section 5472 [Revised Statutes] for the purpose of ascertaining whether or not I am correct; and it will be seen that there is an effort made to draw a distinction between the offense committed in the way of an ordinary assault and where it is sought to be perpetrated by a deadly weapon.
>
> Any person who shall rob any carrier, agent, or other person intrusted with the mail, of such mail, or any part thereof, shall be punishable by imprisonment at hard labor for not less than five years and not more than ten years.
>
> It will be observed that in that clause there is nothing said about a deadly weapon.
>
> And if *convicted a second time* of a like offense, or, if, in effecting such robbery the first time, the robber shall wound the person having custody of the mail, or put his life in jeopardy by the use of dangerous weapons, such offender shall be punishable at hard labor for the term of his natural life. [Emphasis added.]

There is the clear distinction. It will be observed that the latter clause is not lim-

---

4. Section 198 of the bill (S. 2982) provided (brackets and italics in the original):

[Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years, and for a subsequent offense shall be imprisoned *twenty-five years.*]

5. S.Rep.No.10, *supra* at 21, commenting on section 198 of the bill, merely states:

This section is made up of two sections of the Revised Statutes. Under those sections, one committing robbery of the mails, or attempting to do so, and in doing or attempting to do [*sic,* so] which makes use of a dangerous weapon, is subject to imprisonment for life. This language has been omitted and the maximum imprisonment which may be imposed has been reduced to twenty-five years. Identical language appears in H.R.Rep.No.2, 60th Cong., 1st Sess. 21 (1908), commenting on the bill (H.R. 11701), the language of which was eventually substituted for that of S. 2982.

ited entirely to the case of a *second offense*. The increased punishment is given in the case of a *second offense* in any event, and then it goes on to say that even if it be the first offense, if it be attempted with a murderous weapon, there shall be the increased punishment. [Emphasis added.]

42 Cong.Rec. 975–76 (1908). The significance of Senator Bacon's discussion is that he equated "offense" with "convicted" of an offense, and that this apparently was clearly understood, since other senators participating in the debate (Sutherland, Hale, and Heyburn, the floor manager of the bill) gave no contrary indication.

The Government hypothesizes a case of a criminal who robs a United States Post Office every day for a year before being apprehended and who is convicted on each of the 365 counts. Concern is expressed that "the Court would be constrained to treat each count as a 'first offense' even though the criminal had perpetrated each offense separately on successive days for a full year." With the court having discretion to impose imprisonment of up to ten years on each count, sentences to be served consecutively, we do not perceive any significant "constraint." [6]

In view of the foregoing, we hold that the twenty-five year sentence prescribed by 18 U.S.C. § 2114 for a second offense applies only to an offense occurring subsequent to conviction for a first offense.

Appellant argues that, contrary to this court's holding in *United States v. Cameron*, 351 F.2d 448 (7th Cir. 1965), the twenty-five year provision in section 2114 is not a mandatory penalty, so that the availability of parole under 18 U.S.C. § 4205 should have been considered by the trial court; that, assuming the twenty-five year enhanced penalty were applicable, the trial court erred in concluding that the Federal Probation Act (18 U.S.C. § 3651) did not apply;[7] and that the twenty-five year sentence was "excessive and unnecessary." Because of our holding above, it is unnecessary to reach these arguments.

Appellant further argues that he did not have effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution, but we are satisfied that this argument is without merit. The record reveals an admitted lack of cooperation by appellant with his counsel in preparing for trial;[8] that, nevertheless, his counsel conducted a reasonably competent defense. At disposition of the case, appellant stated that he sincerely believed that his counsel "offered to me the most adequate . . . representation at my jury trial . . . ." The trial court remarked that his counsel "is

6. Appellant calls attention to 21 U.S.C. § 851, which requires proof of a prior conviction before imposing an enhanced penalty on recidivist offenders. *See also* 18 U.S.C. §§ 3575–78.

7. Actually, after both the attorney for appellant and the attorney for the Government informed the trial court that the court could grant probation regardless of the mandatory nature of the twenty-five year enhanced penalty, the trial court said:
  Well, I'm denying any stay of execution of the sentence and I'm not granting probation. I don't think probation is justified in this case and even if the Court did not interpret the statute as being mandatory, the Court feels that the facts of this case fully justify the sentence that I have imposed.

8. For example, on June 22, prior to trial, Jack Carey, counsel for appellant, notified the Government that his client would rely upon a defense of insanity. On June 24, Mr. Carey discussed the defense of insanity with appel-

lant and filed a motion for psychiatric examination of appellant at government expense, stating that "the sanity of the defendant at the time of the crime, or in the alternative, the sanity of the accused at the time of trial, is an issue before the Court." Although the Government resisted this motion and moved to preclude introduction of expert testimony relating to a defense of insanity, the court, on June 30, granted leave to have appellant examined by a qualified psychiatrist at government expense. Efforts of appellant's counsel to have appellant appear on July 8 for such an examination and also for an interview with a psychiatrist selected by the Government were all unavailing. On July 11, appellant's counsel waived the defense of insanity before the court. There has been no showing by appellant whatsoever that a defense of insanity would have been meritorious and that waiver of such a defense was prejudicial. *See McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1973); *United States ex rel. Green v. Rundle*, 434 F.2d 1112, 1115 (3d Cir. 1970).

quite a competent lawyer." To this, appellant replied: "Yes, sir." *See United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377, 379 (7th Cir. 1976); *Matthews v. United States*, 518 F.2d 1245 (7th Cir. 1975). Finally, appellant contends that he was denied the opportunity to contribute to the pre-sentence report and that the report was incomplete. However, the record shows that appellant requested that he be sentenced immediately and that he declared: "I don't want a pre-sentence investigation." Nevertheless, at his counsel's urging that there be such an investigation, the trial court deferred sentencing pending an investigation and report. The trial court also, upon his counsel's request, granted permission for his counsel to convey to the probation office any communication desired by appellant. We are satisfied that this argument, too, is without merit.

The sentence imposed by the district court under count two is vacated and the case is remanded for resentencing thereon consistent with this opinion. In all other respects, the judgment is affirmed.