**William A. SUNDEL**

v.

**JUSTICES OF the SUPERIOR COURT, State of Rhode Island: Attorney General of the State of Rhode Island.**

Civ. A. No. 83–0383S.

United States District Court, D. Rhode Island.

Aug. 23, 1983.

**1132**

Temkin & Miller Ltd. by James H. Leavey, Providence, R.I., Edward M. Chikofsky, New York City, for plaintiff.

Dennis J. Roberts, II, Atty. Gen., Kenneth P. Madden, Asst. Atty. Gen., Providence, R.I., for defendant.

## OPINION

SELYA, District Judge.

This petition for a writ of habeas corpus is brought against the Justices of the Superior Court for the State of Rhode Island and the state's Attorney General. The petitioner, William A. Sundel, seeks to prevent the state from proceeding further with a pending criminal prosecution. Jurisdiction is bottomed on 28 U.S.C. § 2254.

Sundel and several codefendants (including one Frank W. Nelson) were indicted in October of 1981 in Kent County Superior Court for possession of marijuana with intent to deliver the same and for conspiracy to commit that substantive offense. Following indictment, John A. O'Neill, Jr., a member of the Rhode Island bar, entered his appearance for both Sundel and Nelson. Subsequent to that entry of appearance, Sundel retained a member of the New York bar, David Breitbart. Since Breitbart was not admitted to practice in Rhode Island, he sought leave to appear as petitioner's trial counsel *pro hac vice.* His motion (hereinafter the "Motion"), supported by O'Neill's agreement to associate with Breitbart and to continue to serve as Sundel's local coun-

sel, was granted by the superior court on January 4, 1982. Thus, both prior to commencement of trial and during the ensuing trial itself, petitioner enjoyed dual representation by Breitbart and O'Neill; his defense, however, was controlled by Breitbart as lead counsel.

After characteristic (and largely unremarkable) preliminary skirmishing, a jury was empanelled on March 31, 1982. By that time, only Sundel and Nelson remained before the court. The taking of testimony began on April 1st. Although it is unclear from the record when the trial judge began to question Breitbart's ability to provide efficacious assistance of counsel, the notion was firmly implanted in the judge's mind by the time of adjournment on the first day of actual trial.[1] Following adjournment on that date, the judge conducted an in-chambers conference with all counsel present. The precise details of that chambers conference are obscure (as the court reporter was not present), but one thing is crystal clear: the judge broached the subject of Breitbart's appreciation and comprehension of Rhode Island procedure and rules of evidence and raised, *sua sponte,* the question of Breitbart's capacity to render effective assistance to Sundel. R. of May 21, 1982 hearing at 2–3. It also appears reasonably certain that the judge advised Breitbart during the chambers conference that his right to appear as trial counsel in the case was at risk. *Id.;* 2 R. at 230–31.

When court resumed on April 2, 1982, the trial justice revoked Breitbart's permission to appear as counsel. He then gave petitioner three alternatives, viz., (i) proceeding *pro se,* or (ii) proceeding with O'Neill as his counsel, or (iii) seeking new counsel. *Id.* at 236. In connection with the last option, the trial justice had emphatically forewarned the petitioner that he would, if this alternative proved to be Sundel's preference, "take this case from the jury". *Id.* at 229. O'Neill then stated his view that there would be a conflict of interest if he acted

---

1. The first day of trial ended with the proffer by Breitbart, out of the presence of the jury, of a self-styled "due process application", and a

motion by attorney O'Neill (acting on Nelson's behalf) for a mistrial.

for both Sundel and Nelson. *Id.* at 236–37. Sundel thereupon sought the opportunity to engage a new trial attorney. *Id.* at 237. The judge acceded to this request and concomitantly declared a mistrial.[2]

Subsequently, Sundel moved to dismiss the indictment on the ground that a retrial would constitute a violation of the petitioner's right not to be placed twice in jeopardy. The trial court denied the motion. On Sundel's application, the Rhode Island Supreme Court stayed all proceedings, and granted a petition for writ of certiorari on July 9, 1982. Following submission of briefs and oral arguments, that court rejected the double jeopardy contention and remanded the case for trial in the superior court. *State v. Sundel,* 460 A.2d 939, 944 (R.I.1983).

With a new trial imminent, the petitioner swiftly explored two further avenues of relief. On June 7, 1983, Sundel requested that the state supreme court reconsider the matter; and, on June 10, 1983, he filed an application for a writ of habeas corpus here, and requested that this court enjoin the state from retrying him until the state supreme court had acted on his prayer for rehearing. This court, in an *ora sponte* bench decision, denied the request for a restraining order both because the petitioner had not exhausted his pursuit of a stay of prosecution from the state supreme court and because it was chary of hasty federal interference in ongoing state criminal proceedings. *See Younger v. Harris,* 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 668 (1971). Shortly thereafter (and before the criminal case was again reached for trial in the superior court), the state supreme court denied Sundel's motion for rehearing. He now presses his application in this court for the writ of habeas corpus, retrial of the state court prosecution being imminent.

The petitioner contends that his retrial will violate the Double Jeopardy Clause of the U.S. Constitution, and also argues that Breitbart's disqualification by the trial court violated his Sixth Amendment right to counsel. The state opposes the petition on grounds that a retrial will not implicate

Sundel's rights under the Double Jeopardy Clause inasmuch as the petitioner, despite characterizations to the contrary contained in Sundel's application, voluntarily moved for a mistrial; and that an aborted trial, so induced, does not bar the occurrence of a second trial. Further, the state asserts that the revocation of Breitbart's permission to act for Sundel was fully justified and in no way contravenes petitioner's Sixth Amendment prerogatives.

## EXHAUSTION OF REMEDIES

Before reaching these issues, however, the court must deal with a threshold contention advanced by the respondents. The state seeks dismissal of the petition on procedural grounds, asseverating that it contains both exhausted and unexhausted claims, *see Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); and that this court is thus debarred from entertaining the application by reason of 28 U.S.C. §§ 2254(b) and (c). In particular, the state contends that the Rhode Island courts have not passed upon Sundel's Sixth Amendment claim; and that the instant case is thus brought within the parameters of *Rose v. Lundy, supra.* This court disagrees. Exhaustion of state remedies does not require that the state judiciary decide each issue presented but only that the issues presented in the federal habeas petition be presented to, and addressed fully in, the state courts. *Smith v. Digmon,* 434 U.S. 332, 334, 98 S.Ct. 597, 599, 54 L.Ed.2d 582 (1978); *Williams v. Holbrook,* 691 F.2d 3, 8 (1st Cir.1982); *Williams v. Moran,* C.A. No. 82–0347P, slip op. at 4 (D.R.I. April 8, 1983). The doctrine demands only that the state courts be accorded a meaningful opportunity to confront the federal constitutional claims of a habeas petitioner before the district court asserts jurisdiction; the decisive question is whether or not the "substance" of the asserted claims have been squarely tendered to the state judiciary. *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 277, 74

**2.** Nelson's motion to pass, *see* n. 1 *ante,* was at this point granted. *Id.* at 237.

L.Ed.2d 3 (1982); *Eaton v. Holbrook,* 671 F.2d 670, 671 (1st Cir.1982).

Surely, a petitioner cannot spring neoteric factual allegations or previously-undeveloped legal theories upon the district court, *see Anderson v. Harless,* 103 S.Ct. at 277, but that is not the case at bar. Here, notwithstanding that the opinion of the state supreme court is silent as to the Sixth Amendment issue, Sundel fulsomely briefed this argument and presented it four-square in the certiorari proceedings. The gravamen of the Sixth Amendment contention here is identical to that eschewed by the state supreme court. Nothing about Sundel's present asseveration can fairly be said to "transform his claim or cast it in a significantly different light." *Domaingue v. Butterworth,* 641 F.2d 8, 12 (1st Cir.1981). *Rose v. Lundy, supra,* is but a red herring in such circumstances, for Sundel indeed has exhausted his state remedies within the meaning of 28 U.S.C. § 2254(b).

## DOUBLE JEOPARDY

The Fifth Amendment to the Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This admonition has been interpreted in certain circumstances to bar the retrial of individuals when the first trial has ended in a mistrial. *E.g., Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973). Unlike an acquittal or a conviction (where the bar is automatic, *see Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830, a mistrial does not however, *ipso facto* prevent the state from retrying the accused. If the defendant requests that the trial be halted, or consents to a motion to pass, then no constitutional barrier exists to a retrial unless the defendant can show that the state contrived to provoke the motion. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982). On the other hand, a mistrial declared *sua sponte* over the objection of the defendant will ordinarily foreclose retrial unless there was manifest necessity for the judge's action. *Id.* at 672, 102 S.Ct. at 2087–88; *Brady v. Samaha,* 667 F.2d 224, 228 (1st Cir. 1981).

Applying these principles to the case at hand, this court first must ascertain whether the petitioner, after Breitbart's removal, voluntarily sought new counsel. If the court so finds, it then must determine whether manifest necessity required the superior court to declare a mistrial. If the court answers yes to both inquiries, a retrial of Sundel is not barred by the Double Jeopardy Clause.

Sundel focuses on the trial justice's disqualification of Breitbart as the crucial act in this drama. That emphasis is misplaced. The trial court did not spin a seamless web, linking Breitbart's removal to the cessation of the trial. Rather, once Breitbart had been excluded from further participation in the case, the judge gave Sundel the three options enumerated above. *See* text, *ante.* Two of these alternatives would not have required a mistrial at all. The first option, proceeding *pro se,* presumably was rejected out of hand by Sundel. The second, continuing with Attorney O'Neill as trial counsel, was foreclosed by O'Neill's perception of a conflict of interest—not by juristic fiat. The petitioner then opted to seek successor counsel. At that point, faced with the virtual certainty of a lengthy continuance in order for the petitioner to secure new counsel and for such counsel properly to prepare, the judge took the case from the jury. Implicit in this action was a finding of manifest necessity. Indeed, had the judge insisted that a newly-engaged attorney pick up the trial in mid-stream and on a moment's notice, Sundel's present protestations would have been mild compared to the howling which would have ensued. Fundamental deference to the rights of the accused necessitated that the superior court, confronted with the dilemma posed by Sundel's decision to retain new counsel, abort the trial.

Other courts, when faced with the possibility of extended delay due to the absence of counsel, the unavailability of the judge,

or the like, have properly held that manifest necessity required the declaration of a mistrial as opposed to the grant of a continuance. *See, e.g., United States v. Lynch,* 598 F.2d 132, 135 (D.C.Cir.1978); *United States v. Williams,* 411 F.Supp. 854, 858 (S.D.N.Y.1976). Since Sundel, by his election to retain a new lawyer, left the court with no viable alternative other than to announce a mistrial, his anticipated retrial would appear to fall well outside of the proscriptions of the Double Jeopardy Clause. He attempts, however, to square the circle by contending that such election was not volitional, *i.e.,* it was forced upon him by the trial judge's peremptory action in disqualifying Breitbart. The petitioner claims that he was left with no real choice at that point, since he did not want to defend himself and since the judge was well aware of the conflict between the defendants and of the fact that such conflict would effectively foreclose petitioner's continued representation by O'Neill. Thus, petitioner reasons, his request for new counsel was a coerced response, forced upon him unfairly and without reason. This court need not determine, however, whether the judge's action in removing Breitbart was proper;[3] suffice it to say that Sundel was not, as he now contends, effectively compelled by the trial justice to request new counsel.

O'Neill's entry of appearance as Sundel's attorney was made contemporaneously with his initial appearance as Nelson's lawyer. Breitbart, in seeking to appear as Sundel's trial counsel, was content to associate himself in Sundel's defense with O'Neill—and O'Neill was, for aught that appears of record, similarly satisfied. O'Neill was every bit as much a part of Sundel's defense team as associate counsel as he would have been as lead counsel; when a lawyer enters an appearance for a client, he commits himself fully and without reservation to the client's

cause, whether or not other counsel share that responsibility. At the time Breitbart's *pro hac vice* motion was granted, it was premised upon Breitbart's express assurance to the court that "in my absence from any hearing or trial ... my associate trial counsel [O'Neill] may act ... in the conduct of such hearing or trial." Motion, ¶ 3. The Motion was assented to by O'Neill and by Sundel. Such assent necessarily signified acquiescence in the agreements limned thereby. Thus, to imply, as does Sundel's present counsel, that the trial justice cunningly held out to Sundel an illusory option by inviting him to continue the trial with O'Neill in the lead, is baseless. If an irremediable conflict barred O'Neill from handling Sundel's defense alone, then it likewise should have precluded his service as local counsel; and the fact that O'Neill had never sought to withdraw from that service[4] was a solid indication to the court that no conflict existed and that the proffered alternative was a real one.

Viewed in this light, the actions of the trial judge cannot fairly be said to have been calculated to euchre or to provoke Sundel into a request for a mistrial. Nor does the record support any inference that the trial justice acted in bad faith; to the contrary, he appears to have displayed commendable deference to, and solicitude for, the rights of the accused.

Accordingly, the court finds that Sundel, having been apprised of his options, chose to avail himself of the opportunity to secure successor counsel (well knowing that such a choice would vitiate the trial then in progress); that this election was made freely and voluntarily; that the trial justice acted out of manifest necessity in declaring a mistrial; and that the series of events was not provoked, within the ambit of *Oregon v. Kennedy, supra,* by the court or by

---

3. Although supererogatory under the circumstances, it should be noted that the trial judge seems, at the very least, to have had reasonable grounds to question Breitbart's familiarity with local practice and procedure, based on his filing and handling of motions, his conduct of jury

voir dire, his opening statement, and his cross-examination of Detective Malley.

4. It should be noted that neither Breitbart nor Sundel had, up to that point, sought O'Neill's ouster.

the prosecution.[5] It follows inexorably that a new trial will not breach the penumbras of the Constitution nor result in placing the petitioner doubly in jeopardy.

### ASSISTANCE OF COUNSEL

Since a retrial is constitutionally permissible, Sundel's claim that his Sixth Amendment rights were violated by Breitbart's ouster becomes, for all intents and purposes, moot.[6] The instant application seeks to release Sundel from the custody of bail, and to bar his re-trial. Yet, the anodyne for improper abridgement of the right to perficient counsel in such a context is a new trial—no more. *See, e.g., United States v. DiFrancesco,* 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). Thus, even if Sundel's claim was to be credited—and this court does not offer any opinion as to the merit of this contention—custody would nonetheless continue and Sundel's retrial would nonetheless take place. It would, therefore, be a meaningless exercise for this court, at this time, to delve into the substance of Sundel's assertions in this respect.

The application for issuance of a writ of habeas corpus is denied and dismissed, and the concomitant prayer for injunctive relief is likewise denied.

*So ordered.*

---

**5.** There is nothing in the record which suggests any benefit or incentive to the state from the mistrial. Although the trial was in its early stages, the prosecution was velivolant at the time of Breitbart's show-down with the trial justice.

**6.** Indeed, while vaticination is a chancy sport at best, this may well explain why the state supreme court declined to pass upon petitioner's argument in this regard.