**Michael F. SPARFVEN**

v.

**UNITED STATES of America.**

**Civ. A. No. 83–0645–S.**

United States District Court, D. Rhode Island.

Jan. 10, 1984.

John B. Reilly, Warwick, R.I., for plaintiff.

Seymour H. Posner, Asst. U.S. Atty., Lincoln C. Almond, U.S. Atty., Providence, R.I., for defendant.

## OPINION AND ORDER

SELYA, District Judge.

Petitioner, Michael F. Sparfven, filed an application to vacate or set aside his sentence under 28 U.S.C. § 2255, accompanied by a motion for enlargement upon bail *pendente lite.* Immediately following the government's response, the court heard arguments upon, and denied, the request for release upon bail. *Sparfven v. United States,* No. 83–0645–S, (D.R.I. Dec. 1, 1983). An evidentiary hearing on the instant application was held on December 5, 1983; the court took the matter under advisement pending submission of briefs (since received).

### Travel of the Case

The events underlying Sparfven's application are susceptible to succinct summarization. In 1982, Sparfven and two co-defendants were indicted by a federal Grand Jury in this district for devising and imple-

menting various schemes to defraud, in violation of 18 U.S.C. §§ 2, 1341 and 1343, in connection with the business and affairs of J.K. Chemicals, Inc. (that firm having been adjudicated a bankrupt on July 2, 1980). *United States v. Fradin, Kaplan, Sparfven*, Cr. No. 82–087 (D.R.I.). The indictment contained thirty-two counts. Early in 1983, Sparfven and three others were indicted for like misconduct in connection with the business and affairs of Francine, Ltd., in violation of 18 U.S.C. §§ 2, 371, 1341 and 1343. *United States v. Fradin, Sparfven, Marsella, Broomfield*, Cr. No. 83–004 (D.R.I.). The second indictment numbered thirty-one counts. Sparfven originally pled not guilty to all charges.

On February 16, 1983, Sparfven and two of his co-defendants (Fradin and Kaplan) appeared before Chief Judge Boyle of this court. Sparfven was represented by eminent criminal counsel in the person of attorney John F. Cicilline. Sparfven planned to enter a change of plea to Count I of each indictment against him (that being, in each case, the conspiracy count). It was reported to Judge Boyle that, if the change of plea was accepted, the government would recommend, as to Sparfven, concurrent five-year jail sentences on each of the two counts; and would, at the time of sentencing, dismiss the remaining charges against him. Transcript of February 16, 1983 hearing ("FT"), at 2. The court had not participated in the plea agreement, and was in no way bound by the prosecution's recommendation. After conducting the hearing mandated by Fed.R.Crim.P. 11, Judge Boyle agreed to accept the altered pleas, FT at 18–19, and Sparfven pled guilty to the first count of each indictment. FT at 19. Sparfven never moved to withdraw the guilty pleas at any time subsequent to their acceptance.

The petitioner was sentenced by Judge Boyle on May 20, 1983. The sentencing judge imposed two five-year jail terms, to run consecutively; but suspended the second term, conditioned upon a five-year probationary period to commence at the time of Sparfven's release from federal custody on the initial sentence. Sparfven was thereupon incarcerated at the federal prison in Danbury, Connecticut, where he still reposes.

Plainly dissatisfied with his desserts, Sparfven engaged his present counsel and moved, some four months later, for reduction of sentence in accordance with Fed.R. Crim.P. 35. That motion was denied by Judge Boyle, without an evidentiary hearing, in a written memorandum opinion. *United States v. Sparfven*, Cr. Nos. 82–087, 83–004 (D.R.I. Nov. 18, 1983) ("*Sparfven I*"). While *Sparfven I* was still *sub judice*, the instant application was filed.

Petitioner's asseveration is predicated on two grounds. He alleges, first, that his Rule 11 hearing was deficient; and second, that he did not have efficacious assistance of counsel at divers stages of the proceedings. The court will deal with these contentions *seriatim*.

### Rule 11 Claims

■ Sparfven's Rule 11 challenge asserts, in substance, that Judge Boyle's conduct of the Rule 11 hearing on February 16, 1983 was such that (i) Sparfven's understanding of the charges against him was not assured, *see* Rule 11(c)(1), (ii) the court did not adequately satisfy itself as to the factual basis for the guilty pleas, *see* Rule 11(f), and (iii) that the court's warnings to Sparfven were faulty, *see* Rule 11(c)(5). Since Sparfven did not appeal from the imposition of sentence, the present petition represents a collateral attack upon his guilty plea (and thus, upon his conviction). The law is well settled that, "[o]n direct appeal, the standard of review is more advantageous to the defendant than on collateral appeal." *Mack v. United States*, 635 F.2d 20, 24 (1st Cir.1980). *See also United States v. DiCarlo*, 575 F.2d 952, 954–55 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). In a collateral proceeding, formalistic violations of Rule 11 avail a defendant nothing; he must show that the error(s) resulted in a total miscarriage of justice or in a proceeding so tainted as to be inconsistent with the basic requirements of fundamental fairness. *United States v. Timmreck*, 441

U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Marquis v. United States*, 698 F.2d 13, 15–16 (1st Cir.1983). *Cf. Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Sparfven cannot, on this record, shoulder such a burden.

The conspiracy counts to which Sparfven pleaded (one in each indictment) were extremely specific. In Cr. No. 82–087, the purpose and scope of the conspiracy is carefully described in the indictment (at 2–3); a detailed (five pages, thirteen paragraphs) recital of the means and methods employed to accomplish the unlawful confederation follows, linking particular defendants to particular maneuvers, *id.* at 3–7; and an explicit chronicle of the overt acts utilized to effect the objects of the conspiracy is set forth in exquisite detail and at great length (five pages, thirty-two paragraphs). *Id.* at 8–13. Each overt act is laid at the doorstep of one or more identified defendants, those chargeable against Sparfven being limned in paragraphs 9, 18–19, and 27. *Id.* Much the same story can be told as to the second indictment, Cr. No. 83–004: the conspiracy is vividly delineated in the indictment (at 1–2); the means and methods are spelled out and particularized with finical precision, *id.* at 2–5; and the overt acts are meticulously set forth in twenty-six separate numbered paragraphs. *Id.* at 5–10. Many of these acts are attributed specifically to Sparfven. *E.g., id.,* ¶¶ 1, 3–16, 19, 21–22, 25–26.

At the December 5 hearing, Sparfven testified that he had read each indictment when served; and Cicilline testified that, upon being retained as private counsel, he had reviewed the indictments with his client and explained to Sparfven the charges against him—including the conspiracy charges. While Sparfven contradicted his counsel's testimony in this respect, his denial was not worthy of belief. And, his testimony to the effect that he did not understand the charges was likewise incredible.

■ Viewed against this backdrop, Judge Boyle's Rule 11 colloquy with the accused was sufficient to insure that Sparfven appreciated the nature of the charges to which he thereafter pled. This is especially so given (i) Sparfven's responses to the court during the February 16 hearing,[1] (ii) the fact that Sparfven was a sophisticated, intelligent fellow, and (iii) the totality of the circumstances, including the questioning and the replies of the other defendants at the multi-party change-of-plea session. It is plain that, taken in the context of what then transpired and what had gone before, Sparfven was placed on notice of the charges against him, and the elements thereof. *Cf. Richard v. Callahan*, 723 F.2d 1028 at 1033–1034 (1st Cir.1983); *McGuirk v. Fair*, 622 F.2d 597, 599 (1st Cir.), *cert. denied*, 449 U.S. 882, 101 S.Ct. 233, 66 L.Ed.2d 106 (1980). Thus, the court holds that the petitioner did, on February 16, 1983, comprehend the charges to which his pleas were entered. *See, e.g., United States v. Barker*, 514 F.2d 208, 226 (D.C. Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). *Cf. Richard v. Callahan, supra.* And, for much the same reasons, Judge Boyle, given the specificity of the indictments, the entire colloquy, and Sparfven's ready acknowledgement of his participation in the twin conspiracies, *e.g.,* FT at 18, cannot fairly be said to have overlooked the factual basis for the guilty pleas.

The final Rule 11 ground urged by Sparfven is that the district judge committed egregious error in the use of language preliminary to the inquiry contemplated by Rule 11(c)(5). Whereas that Rule states that the court should inform the accused "that his answers may later be used against him in a prosecution for perjury or false statement", *id.,* Judge Boyle framed

---

1. *See, e.g.,* FT at 12, where the accused answered in the affirmative the chief judge's specific inquiry: "Do you understand those charges?". Sparfven's puerile effort to explain away this admission by suggesting that his counsel had instructed him that all of the judge's questions would be basic and would require simply "yes" responses insults the fact-finder's intelligence. Not surprisingly, this ploy drew no corroboration from Cicilline.

his question to Sparfven, Fradin and Kaplan thusly:

> Do each of you understand that having been sworn, your answers to my questions will be subject to the penalties of perjury or of making a false statement if you do not answer truthfully? ...

FT at 6.

 The essence of Sparfven's complaint is the failure of the trial judge specifically to mention "prosecution". That argument strikes this court as a distinction searching vainly for a difference. It is hornbook law that Rule 11 does not mandate the magical incantation of language learned by rote. *United States v. Gearin*, 496 F.2d 691, 696 (5th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975). As Judge Friendly has observed, the Rule "does not say that compliance can be achieved only by reading the specified items *in haec verba*". *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir.1977). Here, the accused was fairly apprised by the district court of the potential after-effects of his statements. Rule 11(c)(5) requires no more. Any error inherent in the district judge's failure to intone the word "prosecution" was "inconsequential", *cf. Saft* at 1079, especially since Sparfven's current lament in no wise implicates the falseness of any such statements, nor raises the spectre of an impending prosecution anent the same.

It is true, as the applicant alleges, that these Rule 11 proceedings fall somewhat short of being a textbook model. But, Sparfven had both actual and meaningful notice of the true nature of the charges against him, *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976); *Richard v. Callahan*, at 1034; and there is nothing to suggest that a more extravagant dissertation by the court would have affected the accused's decision to change pleas. *Cf. Nelson v. Callahan*, 721 F.2d 397 at 400 (1st Cir. 1983). As *Mack* states,

> At the core of Fed.R.Crim.P. 11 is the policy that a court should not accept a guilty plea unless it determines that the

plea is voluntary and the defendant understands the nature of the charges...

635 F.2d at 23. Sparfven's pleas of February 16 comported with this standard, and were both volitional and undertaken with cognition of the offenses involved. The central concerns of *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)—lack of coercion, comprehension of the accusations, and an awareness of the potential consequences of the plea revisions—were sufficiently addressed. Congress, after all, "meant to strip district judges of freedom to decide *what* they must explain to a defendant who wishes to plead guilty, not to tell them precisely *how* to perform this important task in the great variety of cases that would come before them." *Saft*, 558 F.2d at 1079 (emphasis in original). Being mindful that the district judge was faced with the thankless chore of handling five changes of plea, involving three defendants and two indictments, simultaneously, his implementation of Rule 11's obligations was adequate, and Sparfven's pleas cannot fairly be said to have been poisoned thereby.

And further, given the rather technical nature of the grievances now lodged by petitioner, the *Timmreck* citadel surely has not been scaled. It cannot in good conscience be said that the district court trampled upon any of the abecedarian safeguards imposed by Rule 11, or that any of Sparfven's rights were ignored, or that fundamental unfairness inhered in the February 16 hearing as the same was conducted by Judge Boyle. As the Fifth Circuit has lately commented:

> One who has pled guilty and done so voluntarily, understandingly, and with knowledge of the consequences of his plea ... has evinced a desire to waive technicalities, to come to terms with the legal system, and to admit his fault. There is something foreign to the spirit of this act, almost invariably done today on the advice of counsel, in a rule that encourages following it by an appeal grounded in a mincing insistance on the punctilios of Rule 11.

*United States v. Dayton,* 604 F.2d 931, 939–40 (5th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Nor does any miscarriage of justice loom on the horizon: Sparfven has, to this date, notwithstanding his multifarious pleadings, affidavits, testimony and memoranda, never asserted his legal innocence; and this factor must weigh in the balance. *United States v. Barker,* 514 F.2d at 220–21. His affidavit of March 1, 1983, filed in the papers in Cr. No. 83–004, presumably in an effort to exonerate the co-defendant Marsella,[2] is a virtual admission of guilt. Just as inculpatory is Sparfven's account of the facts set forth in his Rule 35 motion at 2–8. And, Sparfven's comments to the probation officer (*see* Exhibit B) are to like effect. The government's case has been dismantled. There are no "exceptional circumstances" extant which would warrant relief, given that petitioner pled voluntarily and that he was not in any way prejudiced by the trial court's conduct of the Rule 11 session. *Evers v. United States,* 579 F.2d 71, 73 (10th Cir.1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1253, 59 L.Ed.2d 478 (1979). The ends of justice plainly would be disserved by allowing Sparfven to plead anew, and there is no good cause to do so.

### Sixth Amendment Claims

■ The First Circuit has clearly and resolutely established the "reasonably competent assistance" standard to determine the merit of claims of ineffective assistance of counsel. *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978). Measured by this yardstick, "the quality of a defense counsel's representation should be within the range of competence expected of attorneys in criminal cases." *Id.* Further, as the Court of Appeals stated in *United States v. Garcia,* 698 F.2d 31, 33–34 (1st Cir.1983), a petitioner is "entitled to reasonably competent assistance at each stage of the proceedings ..., from pre-plea investigation and preparation through advocacy at sentencing." And, inadequate preparation has been expressly recognized as a basis for a finding that effective assistance of counsel has been denied. *E.g., United*

*States v. DeCoster,* 487 F.2d 1197, 1201 (D.C.Cir.1973) (*"DeCoster I"*). Such a claim is rooted in the sixth amendment guarantee of counsel, and can be asserted in a proceeding such as this, brought pursuant to 28 U.S.C. § 2255. *United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir. 1983).

While Sparfven attempts to denigrate his representation generally, that shotgun attack does not withstand close scrutiny. As has been noted vis-a-vis claims of debilitated assistance, "the gravity of the charge requires more than the frenzied brandishing of a cardboard sword." *Id.*

In examining the petitioner's averments, virtually all of the "facts" asserted relate to post-plea matters. Sparfven's efforts to cast doubt upon the adequacy of Cicilline's representation through (and including) February 16, 1983 can best be characterized as feeble. He neither points to particular tactical errors nor offers any basis to question the soundness of counsel's advice to change his pleas. Cicilline testified at length as to his activities on Sparfven's behalf; that description was, as to matters extant through the time Judge Boyle accepted the guilty pleas, credible. Cicilline's preparation during that period was adequate, if not superlative; he conferred five or six times with Sparfven, discussed with him available stratagems and tactical options, and did his homework to ascertain the unavailability of putative defenses. While Cicilline's account does not demonstrate an exceptionally high calibre of professionalism, it satisfies the requirements of *United States v. Maguire,* 600 F.2d 330, 332 (1st Cir.1979), *cert. denied,* 444 U.S. 876, 100 S.Ct. 159, 62 L.Ed.2d 104 (1979), and rises to the level of the *Bosch* benchmark.

It is only as to representation anent the sentencing aspect itself that Sparfven begins to put some steel in the flimsy of his flailing bilbo. Even here, the applicant overstates his case. His attempt to impugn counsel's handling of the Probation Department's pre-sentence investigation re-

**2.** This affidavit was also submitted by Sparfven as Exhibit III to his Rule 35 motion.

port ("Report") is lame: the credit-worthy evidence shows that the petitioner read the Report twice in advance of sentencing, and that counsel read it as well. Sparfven never raised any specific factual concerns with counsel; and, under these circumstances, petitioner's asseveration that Cicilline should have filed a formal "rebuttal" (whatever that may be) to the Report is unfounded. The decision not to do so was, at worst, the sort of strategic choice which has long since been recognized as being a breed apart from the dereliction necessary to support a claim of impotent representation. *Bosch*, 584 F.2d at 1121; *Marzullo v. Maryland*, 561 F.2d at 540, 544 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978).

The only point at which petitioner's lamentations ring with persuasive force is in respect to the actual sentencing. It is clear that Cicilline failed to diary the scheduled May 20, 1983 sentencing, and failed to alert his client to the event. When both the defendant and his lawyer neglected to appear that morning, the court deservedly took action. Sparfven, being notified of the snafu by Cicilline's office, went to the courthouse and was promptly taken into custody by the Marshal. Some time later—and shortly before the sentencing hearing resumed—Attorney James Ruggiero, an associate of Cicilline's, appeared. He conferred briefly with Sparfven. He had inadequate knowledge of the case. Despite having been requested by Cicilline (who was engaged in a state court trial) to explain the situation to Judge Boyle and to ask for a continuance, Ruggiero did not do so. He opted to proceed, asking no quarter from the court. Sentence was imposed under these rather shabby circumstances.[3] Judge Boyle's sentence was equivalent to the prosecutor's recommendation as to duration of actual incarceration, but, as noted above, was harsher in its other aspects. At the December 5 hearing, Sparfven testified that Cicilline had led him to expect a lesser sentence.[1] Cicilline, however, only partially confirmed that testimony—he stated that he had specifically told his client that any such forecast was merely his "best guess." And, in any event, Sparfven admitted that he knew all along that the court would not be bound by the government's recommendation.[5]

Objectively viewed, the combined acts and omissions of Cicilline and Ruggiero in this matter at and about the time of sentencing may well amount to "senseless disregard of [a] client['s] rights", *Bosch*, 584 F.2d at 1122, thus divesting petitioner, at that stage of the proceedings only, of the perficient aid of reasonably competent counsel.

### Harmless Error

In the usual case, the anodyne for ineffective legal assistance is a re-play of the infected proceeding under more hygienic circumstances. *Sundel v. Justices of the Superior Court*, 570 F.Supp. 1131, 1136 (D.R.I.1983); *see United States v. DiFrancesco*, 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980). Yet, the situation at hand has a peculiar configuration. Sparfven's representation was unexceptionable throughout most of its course; as noted *ante*, it was only at the sentencing phase that counsel arguably let him down.

The court is mindful that, in this circuit, it is an open question as to whether or not an infraction of the sixth amendment right to effective assistance can ever be treated

---

3. Ruggiero compounded the problem by leading the sentencing judge to believe that he was satisfactorily prepared and equipped to represent Sparfven for purposes of sentencing. He strove to fashion—and did in fact create—a "business as usual" climate. Sparfven, too, raised no objection. And, the import of Ruggiero's testimony was that Sparfven acquiesced, during the brief pre-sentencing meeting between them, in going forward with Ruggiero by his side. Sparfven, according to Ruggiero's uncontradicted testimony, did not appear upset or angered by Cicilline's absence.

4. This testimony was, of course, of variance with Sparfven's assurance to the court that no one had made any "prediction" or "prophecy" to him as to what his sentence might be. FT at 17.

5. Indeed, Judge Boyle made this crystal clear when Sparfven's change of plea was accepted; and Sparfven then affirmed his complete understanding of that facet of the matter. FT at 17.

as harmless error. *Cepulonis v. Ponte,* 699 F.2d 573, 576 n. 4 (1st Cir.1983); *Bosch,* 584 F.2d at 1122–23 & n. 6. And, in those circuits where that question has been answered affirmatively, it is likewise unsettled as to which party must carry the burden of proof. *Id.* The case at bar, because of its unique dimensions, requires the court to open the hitherto-sealed orifice of this rather unwieldy Pandora's jar.[6]

The Supreme Court has indicated that, when fundamental deprivations of the right to proficient counsel occur, the courts must turn a deaf ear to the siren call of harmless error; in those instances, a re-trial is in order even in the absence of a specific showing of prejudice. *E.g., Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (joint representation of co-defendants with conflicting interests); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (abridgement of defense counsel's right to summation at trial). But, there are intimations in the Court's opinions that, in less basic contexts, the harmless error doctrine may well be applicable to ineffective assistance of counsel claims. *United States v. Morrison,* 449 U.S. 361, 364–67, 101 S.Ct. 665, 667–69, 66 L.Ed.2d 564, *reh'g denied,* 450 U.S. 960, 101 S.Ct. 1420, 67 L.Ed.2d 385 (1981); *Brooks v. Tennessee,* 406 U.S. 605, 613, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); *Chambers v. Maroney,* 399 U.S. 42, 54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 *reh'g denied,* 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970). *Cf. Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

Given this rather uncertain base, the circuit courts of appeal have adopted somewhat divergent approaches to the question. The Ninth Circuit has, *de facto,* aligned itself with the view that any denial of effective assistance mandates automatic reversal. *Cooper v. Fitzharris,* 551 F.2d 1162, 1164–65 (9th Cir.1977), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1524, 59 L.Ed.2d 793 (1979). The majority view, however, is that, at least in some marginal types of

cases, more than ineffective assistance must be demonstrated. *E.g., Corn v. Zant,* 708 F.2d 549, 561 (11th Cir.1983) (defendant must show ineffective assistance which worked to his prejudice); *Washington v. Strickland,* 693 F.2d 1243, 1258–61 (5th Cir.1982), *cert. granted,* — U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) (en banc) (defendant must show actual and substantial disadvantage flowing from abridgement of the right to effective counsel; if the same is made out, the prosecution must then prove beyond a reasonable doubt that the outcome was not affected thereby); *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968) (if ineffective assistance is demonstrated, the prosecution has the burden of proof as to want of prejudice).

The dogma of *per se* prejudice appears to this court to be at odds with the notion that the anodyne for a transgression of the right to satisfactory legal assistance should be crafted to fit the circumstance at hand. *United States v. Morrison,* 449 U.S. at 364–65, 101 S.Ct. at 667–68; *Washington v. Strickland,* 693 F.2d at 1259–60. Further, a rule demanding automatic reversal for every violation of the right to deft representation would unfairly penalize the government (and thus, the public) for a matter which—at least where private attorneys are involved—is beyond the ambit of its responsibility and control. *Strickland,* 693 F.2d at 1260; *see McQueen v. Swenson,* 498 F.2d 207, 219 (8th Cir.1974). In a criminal justice system "which strives to hold the balance between the prosecution and the prosecuted steady and true," *United States v. Kobrosky,* 711 F.2d at 454, conferring of such a trouvaille upon the accused strikes a dissonant chord. Lastly, any notion which presumes prejudice in all contexts and under all circumstances perforce erodes the stability of judicial proceedings. As Justice Powell once noted:

No effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded.

**6.** *See Plummer v. Abbott Laboratories,* 568 F.Supp. 920, 925 n. 4 (D.R.I.1983).

At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 262, 93 S.Ct. 2041, 2065, 36 L.Ed.2d 854 (1973) (Powell, J., concurring) (footnote omitted).

■ This court finds the better-reasoned rule to be that which permits the application of the harmless-constitutional-error doctrine, *Chapman v. California*, 386 U.S. at 22, 87 S.Ct. at 827, to deprivations of efficacious assistance, in cases where (i) the violation does not run to a matter so basic as to trench inexorably, by its very nature, upon the elementary rights of the accused to a fair trial, *e.g.*, *Holloway, supra*, (ii) the infraction is not the result of conduct fairly attributable to the government (*i.e.*, the prosecution or the court), and (iii) the determination of the quantum and effect of disadvantagement can be made objectively, without "unguided speculation". *Id.*, 435 U.S. at 491, 98 S.Ct. at 1182.

The adoption of such an approach allows for a case-by-case examination of each instance wherein a shortfall in the quality of legal aid is alleged, so that a reviewing court can sensibly separate the wheat of fundamental deprivation from the chaff of technical or peripheral miscues. The approach recommends itself by its logical consistency with the "reasonably effective assistance" rule, and by its utility in optimizing constancy to constitutional principle without requiring substance to be sacrificed on the altar of stylistic ritual. Common sense and constitutional fidelity need not always be at loggerheads; as the Fifth Circuit has so aptly stated in *Davis v. Alabama*, 596 F.2d 1214, 1222 (5th Cir. 1979): "Not every variety of attorney ineffectiveness should be treated in the same way."

■ The role of defense counsel in a sentencing procedure such as was here undertaken is, in all events, a limited one. This is not the sort of a case where a separate assessment-of-punishment trial has been botched. *Cf. Vela v. Estelle*, 708 F.2d 954 (5th Cir.), *petition for cert. filed*, 52 U.S.L.W. 3268 (Sept. 22, 1983) (No. 83–506). Defense counsel's function was to marshal the facts and the arguments so as to place the accused and his malefactions in the most favorable light, to counter errors, exaggerations or misleading or extraneous material introduced by the prosecution and/or the probation officer, and skillfully to advocate the defendant's position before the sentencing judge. Cicilline did not make himself available to perform these tasks, and Ruggiero—while a journeyman criminal lawyer—was inadequately prepared to do so in Sparfven's case. Be that as it may, Sparfven did not suffer the inherent prejudice attendant upon, say, unwarranted interference by the court with his testimonial rights, *e.g.*, *Geders v.· United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (trial court foreclosed defense counsel from consulting with his client during an overnight recess immediately before cross-questioning of the accused was to commence), nor was he totally deprived of the services of competent counsel, *e.g.*, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state refused to appoint counsel to aid in the defense of indigent). Sparfven's complaint is of a discrete error in preparation by an admittedly seasoned attorney under circumstances such that there is no implicit adverse effect of constitutional dimensions which cries out for expungement, nor any palpable basis for a showing that more effective assistance would have altered the shape of the sentence imposed. The detriment, if any there was, is readily susceptible to classification as *de minimis*.

The facts which could have been assembled on the defendant's behalf were in fact placed before the sentencing judge by means of a prolix letter authored by Sparfven—and authored by him, it should be noted, after consultation with Cicilline.[7]

7. Although Sparfven equivocates on this point, this finding is a fair inference from the evidence

Ruggiero, all things considered, did a run-of-the-mine job at the May 20 hearing. The transcript reveals no counter-productive attempts at misdirected advocacy. The accused was, of course, afforded the right of allocution. MTA at 3. The government's presentation at sentencing was straightforward, free of discernible error or impermissible innuendo, and altogether in keeping with the tenor of its prior recommendation agreement.

Sparfven's present counsel virtually concedes as much, *sub silentio*. He (and his client) concentrate their fire almost exclusively on the Report. Yet, Sparfven read the report twice before inscribing his letter to the court. He was told by Probation Officer Flanagan that, if the Report was inaccurate in any respect, he should point out the error(s)—and she would correct it; he never did so,[8] nor did he mention to her in the course of numerous conversations both before and after his sentencing that he had any fault to find with the Report. He never told either Cicilline or Ruggiero of any inaccuracy in the Report. And, perhaps most noteworthy, he has *to this day* been unable credibly to articulate any specific problem with the Report, or any particular misstatement or unfairly prejudicial matter contained therein. Cicilline, too, was unable to recall any improper inclusions in the Report. This court has reviewed the Report in its entirety, in the afterlight of Sparfven's affidavits and averments, and finds nothing of substance in the latter which materially affects the thrust and direction of the Report. The

Report is a balanced, dexterous and workmanlike compilation of the relevant data.

It is also significant that Sparfven has already had a second bite at the sentencing apple by means of his Rule 35 motion. That motion, while it is described by Sparfven as a *pro se* instrument, was filed some six weeks after his present able counsel had entered an appearance on his behalf. Judge Boyle's comments on the Rule 35 motion are revealing:

> (T)he defendant does not now assert that there were any errors of substance in the ... Report or that facts and circumstances were omitted which would have substantially affected ... the Report.

*Sparfven I*, slip op. at 4.

And further, Judge Boyle observed:

> Defendant's motion also includes a general statement of facts which provides no basis for a reduction of sentence, ...
>
> \* \* \* \* \* \*
>
> ... (T)he court is satisfied that the sentence imposed is a just sentence reflecting the continuing nature of the offense, the injury to victims and the need to deter others from similar conduct.

*Id.* at 5.

Finally, it cannot be ignored that the sentence imposed was not far different than that which the prosecution agreed to—and did—recommend. Judge Boyle's description of Sparfven as "the catalyst of this scheme", MTA at 3, is fully borne out by the record. This court, having had the opportunity to review the indictments, the Report and the petitioner's version of the facts and circumstances, is completely persuaded that the sentence was and is fair and just.[9] And, it was not in any way,

---

adduced at the December 5 hearing. The transcript of the May 20 hearing shows that Judge Boyle had read and received that letter. *Sparfven I*, slip op. at 2; transcript of May 20, 1983 hearing, afternoon session ("MTA"), at 3.

**8.** Sparfven attributed this failure to Flanagan's statement that "the Report could not be changed." Flanagan denied having made this remark, and, in fact, testified that she invited Sparfven's input for corrective purposes. Flanagan was a model of candor, and the court credits her testimony rather than the petitioner's on this point.

**9.** The petitioner makes much of the fact that Sparfven's sentence exceeded those imposed by

Judge Boyle on two of the co-conspirators (Fradin and Kaplan). But, Sparfven takes nothing by this argument. He well knew at the change-of-plea hearing that the government was recommending lesser sentences for these two co-defendants; and he offers no facts to rebut the plain illation to which the subject indictments and attendant circumstances give rise: he merited the sentence which he received. Kaplan, a first offender, was sucked into the scam, principally by Sparfven. *E.g.*, Transcript of May 20, 1983 hearing, morning session ("MTM"), at 5–6. Fradin, unlike Sparfven, had cooperated fully with the government from and after the time that the first indictment was handed up. *E.g.*, MTM at 1. Each received a sentence in line with what the prosecutor recommended.

shape or form a result-oriented response either to Cicilline's scheduling mix-up or to Ruggiero's want of preparation. The sentence does not appear to be unduly harsh or punitive. Quite the contrary: it seems to be well within the range of the punishment that Sparfven deserved—and should have expected.

It has accurately been said that "(t)he sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Vela v. Estelle*, 708 F.2d at 966. There is an utter absence here of any hint either that alleviatory material existed which was not called to the attention of the sentencing judge, or that unfairly provocative matter was allowed to infiltrate the sentencing proceeding. The court, on this record, need not engage in conjecture or vatication to conclude that any ineffectiveness on the part of Sparfven's counsel did not result in actual or substantial disadvantage: assuming, without deciding, that the burden of proof as to want of prejudice lies with the prosecution,[10] that burden has been met here. In the context of the totality of the circumstances, it remains certain beyond a reasonable doubt that counsel's bungling was not outcome-determinative, and that the sentence imposed would in all events have been equivalent. The court concludes, therefore, that any ineffective assistance at and about the time of the petitioner's sentencing was *damnum absque injuria*, and therefore, harmless error.

10. In view of the lop-sided weight of the evidence on the point at issue, it is unnecessary for this court to choose between the conflicting approaches of the circuit courts as to allocation of the burden of proof. Instead, the court has opted to apply the Fourth Circuit rule, that being the most hospitable to Sparfven's contention. While leaving the question open for a later date, however, the court notes that there is a clear trend toward requiring that the defendant sustain, at the very least, the initial burden of demonstrating actual and substantial detriment. *E.g., Corn v. Zant*, 708 F.2d at 561; *Washington v. Strickland*, 693 F.2d at 1262; *United States v. Cooper*, 580 F.2d 259, 263 n. 8

*Conclusion*

It would serve no useful or legitimate purpose to vacate Sparfven's sentence, and to order resentencing. Nor is any such result mandated on these facts or under applicable law. Thus, for the reasons articulated above, Sparfven's application for collateral post-conviction relief pursuant to 28 U.S.C. § 2255 must be, and it hereby is, denied and dismissed.

*It is so ordered.*

(7th Cir.1978). *Cf. United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). And, this trend has gained considerable momentum in light of the reversal of position on the question reflected by the recent pronouncements of the much-respected District of Columbia Circuit. *Compare DeCoster I*, 487 F.2d at 1204 (once ineffective assistance has been shown, burden is on the government to establish lack of prejudice) *with United States v. Decoster*, 624 F.2d 196, 238 (D.C.Cir.1979) (en banc) ("*Decoster III*") ("(A) mere breach of duty to an accused is not a constitutional violation unless the defendant proves that he was prejudiced.").